SAFWAN BARAKAT, Plaintiff-Appellant, v. MARSHALL MATZ, Defendant-Appellee.

First District (3rd Division)   No. 1—93—2433

Opinion filed March 31, 1995.

Michael W. Rathsack, of Chicago (Paul E. Nemoy, of counsel), for appellant.

Phillip J. Zisook and Paul M. Levy, both of Deutsch, Levy & Engel, Chartered, of Chicago, for appellee.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Following the dismissal of his six-count complaint, plaintiff Safwan Barakat, M.D., appeals only the dismissal of two defamation counts against defendant Marshall Matz, M.D.

On appeal, plaintiff argues that (1) certain written statements included in reports prepared by a consulting physician for a worker's compensation insurance carrier are actionable as defamatory and (2) certain verbal statements of a consulting physician for a worker's

compensation insurance carrier to a worker's compensation claimant are actionable as defamatory.

We find that the written statements contained in the consulting physician's reports to insurance companies are protected against a defamation action by qualified privilege and thus we affirm the dismissal of plaintiff's counts (counts I and II) as to the written statements. We also find, however, that the verbal statements made by the defendant to one of the worker's compensation claimants may be actionable and thus reverse the dismissal of plaintiff's count (count I) as to these oral remarks.

Both plaintiff and defendant are licensed physicians and neurosurgeons who practice in Illinois. At all relevant times, plaintiff was serving as a treating physician for two worker's compensation claimants, i.e., Patricia Hunley and Dale Lemke. Defendant serves as a paid medical consultant for various worker's compensation insurers, including Alexis Insurance Company, which covered Patricia Hunley, and the Martin Boyer Insurance Company, which covered Dale Lemke. The insurers retain defendant to review claims for worker's compensation medical benefits and to make recommendations to the insurers regarding the necessity for medical treatment proposed by the treating physicians of the worker's compensation claimants.

Plaintiff filed a six-count complaint against defendant alleging claims of defamation, violations of the Uniform Deceptive Trade Practices Act (815 ILCS 510/1 et seq. (West 1992)) and tortious interference with a prospective economic expectancy. Only the two defamation counts (counts I and II) are on appeal.

Count I alleged defamation for written statements included in defendant's report about Patricia Hunley to Alexis Insurance Company (referred to as the Alexis report) and for verbal statements made by defendant to Hunley during her office visit to defendant (referred to as the Hunley statements).

Count II alleged defamation for written statements included in defendant's report about Dale Lemke to the Martin Boyer Insurance Company (referred to as the Martin Boyer report).

The Alexis report which was attached to plaintiff's complaint stated in part:

"If you are not aware of [plaintiff's] reputation, I would appreciate hearing from you directly.

\* \* \*

The treatment that she is getting at the office of [plaintiff] is in this writer's opinion unnecessary. She is not in need of epidural steroid injections. The myelogram and postmyelographic CT scan was a waste of resources, and in my opinion, this approach is only

tending to prolong her period of time loss. Objectively speaking, she can resume her usual employment activities without restriction at this date in time."

The complaint alleged that defendant stated "plaintiff's treatment of Patricia Hunley is unnecessary and wasteful and implies that the plaintiff has a poor professional reputation." This count does not suggest defendant is guilty of a direct intention to injure plaintiff or that it was made in reckless disregard of plaintiff's rights.

After reviewing various medical reports pertaining to Lemke, defendant wrote the Martin Boyer report, which provides in pertinent part:

"I would suggest that we obtain the films for further review. I should also advise you that my experience with the treating physician in this case has been highly unsatisfactory with respect to the appropriateness of surgical intervention, and I would not at this point recommend that you authorize any further treatment at his hands.

If possible, once again, I would request an opportunity to review the original diagnostic studies."

In count II, relating to the Martin Boyer report, plaintiff makes a general allegation that the report was published "with reckless disregard as to its truth or falsity."

Count I was also predicated upon oral statements made by defendant to Ms. Hunley on the occasion of his examination of her. Plaintiff alleges:

"That on or about October 26, 1991, the defendant performed said examination at which time he told Patricia Hunley that the plaintiff 'was not any good,' that 'his practice was not any good,' that 'his practice was a joke,' and that 'his opinion was not any good.' "[1]

Defendant filed a section 2—619 motion to dismiss (735 ILCS

---

[1]Ms. Hunley provided the following statement to an investigator employed by plaintiff's counsel which was incorporated by reference into the complaint:

"A. [Defendant] started saying, well, he didn't think that [plaintiff] was any good and his opinion, that he was a joke.

Q. Now, did he say that [plaintiff] is a joke or his practice is a joke?

A. That [plaintiff's] practice was a joke.

Q. Did you ask him what he meant?

A. [Defendant] just said he didn't they [sic] he was any good as a doctor, as a neurosurgeon. That he's had patients from him before and he's found nothing wrong with his patients.

Q. Did he make any comment as to how many patients?

A. No, he said some patients, he's had patients from him.

5/2—619 (West 1992)) claiming that the challenged statements were protected by absolute privilege, by qualified privilege or as professional opinions, not representations of fact. In the alternative, defendant contended that even if the statements at issue were not privileged, they were capable of innocent construction and thus not actionable.

Following a hearing, the trial court granted defendant's motion to dismiss, reasoning that although it was not clear whether the absolute privilege applied, defendant's statements were protected by a qualified privilege, constituted opinions as a matter of law, and were capable of innocent constructions.

First, we direct attention to the alleged written defamation included in the two reports prepared by defendant for the worker's compensation insurance carriers, *i.e.*, the Alexis and Martin Boyer reports.

Plaintiff asserts that the challenged written statements constitute defamation *per se* because each comment questioned the ability of plaintiff to perform his duties as a physician and prejudiced him in his profession. Plaintiff further argues that the statements are not subject to protection by absolute privilege, under the innocent construction rule or as an expression of opinion. At oral arguments, however, plaintiff conceded that the two insurance reports are subject to qualified privilege but claimed that a jury question remained as to whether or not defendant abused the qualified privilege.

Defendant contends that the challenged statements are nondefamatory as a matter of law, absolutely privileged, nonactionable as opinions, capable of innocent construction and protected by qualified privilege.

No clear rule exists for determining whether language is defamatory and thus each case must be decided on its own facts. (*Rosner v. Field Enterprises, Inc.* (1990), 205 Ill. App. 3d 769, 789, 564 N.E.2d 131.) Four categories of words, however, are considered defamatory *per se* where they impute: (1) commission of a crime; (2) infection with a communicable disease; (3) inability to perform or want of integrity to discharge duties of office or employment; and (4) prejudice

---

Q. Did he say anything directly about [plaintiff] not being a good doctor?

A. He said he wasn't any good. He said his opinion wasn't any good.

Q. How did you feel when defendant said that to you?

A. I didn't take anything by it because I figured, the way he examined me, I didn't care.

Q. What do you mean?

A. Well, he didn't do anything."

to a party, or lack of ability, in his trade, profession or business. *Kolegas v. Heftel Broadcasting Corp.* (1992), 154 Ill. 2d 1, 10, 607 N.E.2d 201; *Marczak v. Drexel National Bank* (1989), 186 Ill. App. 3d 640, 644, 542 N.E.2d 787.

■ In the present case, the language used in the reports and the context in which the statements were made clearly accuse plaintiff, at the very least, of professional incompetence by providing "unnecessary" treatment and performing medical tests which were a "waste of resources." Furthermore, the reports defame plaintiff's professional reputation in general by references to prior unsatisfactory experiences with plaintiff. Given defendant's obvious disparagement of plaintiff's professional abilities, we believe that the statements constitute defamation *per se.*

Even *per se* defamatory statements, however, may not be actionable if immunized by absolute privilege (*Layne v. Builders Plumbing Supply Co.* (1991), 210 Ill. App. 3d 966, 969, 569 N.E.2d 1104), if shielded under the innocent construction rule (*Kolegas,* 154 Ill. 2d at 11; *Mittelman v. Witous* (1989), 135 Ill. 2d 220, 232, 552 N.E.2d 973; *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 442 N.E.2d 195), if safeguarded as an expression of opinion (*Mittelman,* 135 Ill. 2d at 239), or if protected by qualified privilege (*Kuwik v. Starmark Star Marketing & Administration, Inc.* (1993), 156 Ill. 2d 16, 619 N.E.2d 129).

Whether or not an allegedly defamatory statement is protected by an absolute or qualified privilege is a question of law to be determined by the court. *Adco Services, Inc. v. Bullard* (1993), 256 Ill. App. 3d 655, 659, 628 N.E.2d 772 (absolute privilege extended to letters sent to quasi-judicial agencies concerning the regulation of radioactive waste disposal); *Layne,* 210 Ill. App. 3d at 969 (absolute privilege applied to communications to the police concerning alleged criminal activities).

The law grants an absolute privilege "where there exists a significant interest in protecting the type of speech involved." *Defend v. Lascelles* (1986), 149 Ill. App. 3d 630, 635, 500 N.E.2d 712 (absolute privilege applies to pleadings alleging a civil cause of action under a Federal criminal statute).

Since it affords complete immunity, the classification of absolutely privileged communications is necessarily narrow and generally limited to discreet situations which involve legislative, judicial, quasi-judicial proceedings and other acts of State. *Rosner,* 205 Ill. App. 3d at 790; *Dark v. United States Fidelity & Guaranty Co.* (1988), 175 Ill. App. 3d 26, 35, 529 N.E.2d 662.

In the present case, defendant seeks the shelter of absolute privi-

lege by attempting to place his communications within the purview of a judicial setting.

Within the judicial context, the absolute privilege covers formal pleadings, in-court communications and "any communication pertinent to pending litigation." (*McCutcheon v. Moran* (1981), 99 Ill. App. 3d 421, 425, 425 N.E.2d 1130.) In addition, absolute privilege extends to proceedings by administrative agencies which act in a judicial or quasi-judicial capacity. (*McCutcheon*, 99 Ill. App. 3d at 425 (absolute privilege protected statements made about the plaintiff-school principal by the defendant-school janitor to the trial committee of the board of education and to members of the State's Attorney's office); see also *Adco Services*, 256 Ill. App. 3d at 659 (and cases cited therein) (absolute privilege attached to two letters authored by the defendant-former employee and sent to two quasi-judicial agencies concerning the plaintiff-company's radioactive waste program).) In the context of such proceedings, the "absolute privilege embraces actions required or permitted by law in the course of judicial or quasi-judicial proceedings as well as actions 'necessarily preliminary' to judicial or quasi-judicial proceedings." *Parrillo, Weiss & Moss v. Cashion* (1989), 181 Ill. App. 3d 920, 928, 537 N.E.2d 851 (absolute privilege applied to an unsolicited letter which requested the initiation of an investigation of an insurance company and which was sent by the individual defendant to the Director of the Illinois Department of Insurance).

■ This court and the parties concur that a qualified privilege applies to the two reports prepared by defendant and submitted to the insurer.

To determine whether a conditional privilege exists,

"a court looks only to the occasion itself for the communication and determines as a matter of law and general policy whether the occasion created some recognized duty or interest to make the communication so as to make it privileged." *Kuwik*, 156 Ill. 2d at 27.

In *Kuwik*, the Illinois Supreme Court adopted the approach to qualified privilege from the Restatement (Second) of Torts and discarded the five-element test previously applied in Illinois. *Kuwik*, 156 Ill. 2d at 25, 27; Restatement (Second) of Torts §§ 593 through 599 (1977).

Under such analysis, three classes of conditionally privileged occasions are recognized:

" '(1) situations in which some interest of the person who publishes the defamatory matter is involved

(2) situations in which some interest of the person to whom the matter is published or of some other third person is involved

(3) situations in which a recognized interest of the public is concerned.' " *Kuwik*, 156 Ill. 2d at 29, quoting S. Harper, F. James & O. Gray, Torts § 5.25, at 216 (2d ed. 1986).

In *Kuwik*, the plaintiff chiropractor filed a libel action against certain insurance carriers and their employees for statements made in two letters. The supreme court held that the qualified privilege, as a matter of law, protected the two challenged letters. The first letter was sent to a health insurance claimant by her insurance carrier denying her claims for treatment by the plaintiff. Following the issuance of this first letter, the plaintiff filed a formal complaint with the Illinois Department of Insurance. The second letter was sent to the Department of Insurance by the insurance carrier's parent company in response to the formal complaint filed by the plaintiff. The supreme court reasoned

"that both letters were sent on occasions where not only the interests of defendants [insurance carriers and their employees] were involved, but where plaintiff's [chiropractor] and [the patient/claimant's] interests were involved as well. The letters were sent on occasions where a misstatement of information should be afforded some degree of protection in order to facilitate the free flow of correct information." *Kuwik*, 156 Ill. 2d at 29-30.

In accordance with *Kuwik*, we find that the present situation involves "some interest of the person to whom the matter is published" as stated in the second category of conditionally privileged occasions. In the instant case, the worker's compensation insurers (*i.e.*, the person to whom the matter is published) clearly have an interest in determining the validity of worker's compensation claims.

Since we find that the statements included in the written reports to the insurers are protected by qualified privilege, we need not address defendant's alternative arguments regarding opinion and innocent construction.

The scope of protection afforded by qualified privilege, however, can be exceeded, thereby abusing and thus defeating the privilege. Therefore, the inquiry next becomes whether or not the privilege was abused.

Whether the privilege was abused is generally a question of fact to be determined by the jury. (*Kuwik*, 156 Ill. 2d at 27, 30.) To prove an abuse of the qualified privilege, the defamation plaintiff must show a direct intention to injure another or a reckless disregard of the defamation plaintiff's rights and of the consequences that may result to him. (*Kuwik*, 156 Ill. 2d at 30, relying on *Bratt v. International Business Machines Corp.* (1984), 392 Mass. 508, 514, 467 N.E.2d 126, 131.) "[A]n abuse of a qualified privilege may consist of any reckless act which shows a disregard for the defamed party's rights,

including the failure to properly investigate the truth of the matter, limit the scope of the material, or send the material to only the proper parties." *Kuwik*, 145 Ill. 2d at 30.

Plaintiff would have us remand the case for further proceedings to determine whether defendant abused the scope of the qualified privilege based on two arguments: (1) the substance of the insurance reports exceeded the scope of the material by not limiting the statements therein to the subject patient but rather by including general statements as to defendant's knowledge of plaintiff, and (2) the material was improperly sent to both the insurers and the claimants.

■ We believe that both assertions advanced by plaintiff are meritless. First, the content of the reports at issue clearly evaluates the patients for which the reports were ordered. Defendant's statements which, in a general manner, advised the insurers of his prior experience with plaintiff, necessarily fall within the permissible scope of such report since the very reason for the report is to determine the validity of and the need for the treatment prescribed by plaintiff. To ignore past experiences with the same physician commands defendant to perform his job while wearing blinders and to require a myopic vision which serves only to obstruct the exact process which the worker's compensation claimants seek to advance.

Second, the Workers' Compensation Act (Act) specifically provides that an employee seeking disability payments must submit, if requested by the employer, to an examination by a medical practitioner selected by the employer. (820 ILCS 305/12 (West 1992).) The Act further provides that the examining doctor has a duty

"to deliver to the injured employee, or his representative, a statement in writing of the condition and extent of the injury to the same extent that said surgeon reports to the employer and the same shall be an exact copy of that furnished to the employer." 820 ILCS 305/12 (West 1992).

In light of the Act's directive, we find nothing improper with the submission of defendant's reports to the insurers and to the claimants.

Plaintiff's complaint was dismissed by a motion under section 2—619. (735 ILCS 5/2—619 (West 1992).) A section 2—619 motion provides a method to obtain "a summary disposition of issues of law or of easily proved issues of fact, with a reservation of jury trial as to disputed questions of fact." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge* (1993), 156 Ill. 2d 112, 115, 619 N.E.2d 732.

Under the standards enunciated for a section 2—619 dismissal, we find no disputed issues of material fact for a jury to consider and hold that defendant is entitled to judgment as a matter of law on the defamation counts relating to the insurance reports.

Next, we direct our attention to the verbal statements spoken by defendant to Patricia Hunley during her office visit.

Rules which apply to libel equally apply to slander since distinctions between the two actions have been abolished, except as to whether the defamation was written or spoken. *Rosner*, 205 Ill. App. 3d at 789; *O'Donnell v. Field Enterprises, Inc.* (1986), 145 Ill. App. 3d 1032, 1036 n.2, 491 N.E.2d 1212.

■ Applying the same previously enunciated legal principles, we find that neither absolute nor qualified privilege protects the verbal statements made by defendant to Hunley. The challenged verbal statements were made during the course of the medical examination of a worker's compensation claimant who had been compelled to submit to the examination in order to receive worker's compensation benefits. Such occasion does not constitute a circumstance warranting the application of either privilege.

Next, we reject defendant's contention that the defamatory statements made to Hunley are nonactionable opinions. Expressions of opinion are protected from defamation claims while statements of fact are actionable. (*Mittelman*, 135 Ill. 2d at 239.) Mixed expressions of opinion and fact may also be actionable. *Mittelman*, 135 Ill. 2d at 242.

Statements of fact usually concern the defamation of plaintiff's character or conduct. (*Mittelman*, 135 Ill. 2d at 241.) On the other hand, rhetorical hyperbole cannot reasonably be construed as stating a fact and thus is not actionable as defamation. (*Kumaran v. Brotman* (1993), 247 Ill. App. 3d 216, 228, 617 N.E.2d 191, citing *Milkovich v. Lorain Journal Co.* (1990), 497 U.S. 1, 20, 111 L. Ed. 2d 1, 19, 110 S. Ct. 2695, 2706.) A mixed expression of opinion and fact "is an opinion in form or context that is apparently based upon facts which have not been stated by the defendant or assumed to exist by the parties to the communication." *Mittelman*, 135 Ill. 2d at 242, citing Restatement (Second) of Torts § 566, at 172 (1977).

To determine whether a statement is one of fact or opinion, Illinois courts consider the totality of the circumstances and whether the statement can be objectively verified as true or false. *Kumaran*, 247 Ill. App. 3d at 228 (a newspaper article stating that the plaintiff was "working a scam" by filing frequent, unwarranted lawsuits was fact, not opinion, and thus actionable); *Haberstroh v. Crain Publications, Inc.* (1989), 189 Ill. App. 3d 267, 273, 545 N.E.2d 295, 299 (three letters published in the "letters to the Editor" section of a publication were expressions of opinion and thus not actionable).

In addition, to analyze the often troublesome opinion/fact dichotomy courts can also consider whether the statement implies

factual allegations; whether the statement is verifiable; whether the literary context of the statement would influence the average recipient's readiness to infer that a particular statement has factual content; and whether the broader social context or setting in which the statement appears signals a usage as either fact or opinion. *Mittelman*, 135 Ill. 2d at 243-44.

■ In the present case, we find that the challenged statements constitute statements of fact or, at the very least, mixed expressions of fact and opinion which are actionable. Defendant's uninvited remarks stated that defendant "had patients from [plaintiff] before"; that defendant "found nothing wrong with his patients"; that plaintiff's "practice was a joke"; that plaintiff was not "any good as a doctor"; and that plaintiff's "opinion wasn't any good." Defendant's comments clearly and directly concern plaintiff's professional conduct and character and as such can be viewed as statements of fact. Moreover, the statements obviously imply an underlying factual basis which could be verified, *i.e.*, previous patients from plaintiff which were examined by defendant.

We also reject defendant's contention that his statements to Hunley are reasonably capable of an innocent construction.

Statements will not be found defamatory *per se* if they are reasonably capable of an innocent construction. *Kolegas*, 154 Ill. 2d at 11.

" 'The gist of the innocent construction rule is that the statement is to be construed in the context it is published in, and that words should be given their natural and obvious meanings.' " *Kumaran*, 247 Ill. App. 3d at 227 (rejected the innocent construction of the challenged statements), quoting *Harte v. Chicago Council of Lawyers* (1991), 220 Ill. App. 3d 255, 262, 581 N.E.2d 275, 279; see also *Chapski*, 92 Ill. 2d at 352.

"The test is not whether the words reasonably can be innocently interpreted, but rather 'whether the words, considered in context and given their natural and obvious meaning, may reasonably be innocently interpreted.' " *Kumaran*, 247 Ill. App. 3d at 227, quoting *Rosner*, 205 Ill. App. 3d at 805-06.

In his brief, defendant argues that his statements to Hunley "innocently demonstrate that he believed there was nothing objectively wrong with Hunley to render her unable to attend to the duties of her employment, that there was no reason for Alexis to provide her with further workers compensation benefits and that there was no reason for Alexis, given those circumstances, to approve further treatment by [plaintiff]."

■ Defendant's efforts to place his comments within the realm of

innocent construction ignores the actual words at issue, defies the natural and obvious meanings of the defamatory words used, and disregards the context in which the words were spoken. Defendant's remarks cannot be construed merely as statements regarding Hunley's physical ability to perform her job and the needlessness of continuing payment of worker's compensation benefits and medical treatment. Instead, the natural and obvious meaning of the questioned statement denotes that plaintiff was professionally incompetent and had mistreated previous patients.

For all the foregoing reasons, we affirm the dismissal of count II in its entirety and the dismissal of count I as it relates to the written statements in the report to the insurance company. We reverse the dismissal of count I as it relates to the verbal statements made by defendant to Hunley during his medical examination of her and remand to the circuit court for further action consistent with this decision.

Affirmed in part; reversed in part and remanded.

TULLY and CERDA, JJ., concur.