February 4, 1999

NO. 4-98-0490

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THEODORE R. TURNER, ) Appeal from 

Plaintiff-Appellant ) Cir­cuit Court of

v. ) Champaign Coun­ty

DAVID J. FLETCHER, M.D., ) No. 96L235 

Defendant-Appellee, )

and ) 

OLIVER J. CLARK, KRYSTAL FITZPATRICK, ) 

JASON EVERSOLE, LARRY GIBSON, and )

BOARD OF TRUSTEES OF THE UNIVERSITY ) Hon­orable

OF ILLINOIS, ) George S. Mill­er,

Respondents in Discovery. ) Judge Presid­ing.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, Theodore R. Turner, appeals the trial court's dis­missal of his defa­ma­tion and in­ten­tion­al in­ter­fer­ence with con­tract claims.  We affirm.  

I.  BACKGROUND

Turner is a police officer for the University of Illi­

nois police department in Champaign, Illinois, and has been since 1988 or 1989.  In April 1995 Turner was placed on adminis­tra­tive leave with pay following reprimands and an evalua­tion by Dr. Campion finding Turn­er unfit for duty.

In May 1995 Turner's supervisor, Captain Krystal Fitzpatrick, contracted defendant, Dr. David Fletcher, M.D., MPH FACOEM (Master Public Health, Fellow American College Occupation­

al and Environmental Medicine), to eval­u­ate Turner's fit­ness for duty.  Fletch­er is a board-cer­ti­fied occupa­tional and preven­tive medi­cine practi­tio­ner af­fili­ated with Mid­west Occupa­tional Health Asso­ci­ates.  In a five-page let­ter to Fletch­er, Fitzpatrick de­

tailed the department's obser­va­tions of Turner's on-the-job con­

duct and the effect of that con­duct on Turner's fellow officers, super­vi­sors, and mem­bers of the public.  Fitzpatrick noted a re­

cent in­crease in the fre­quen­cy and intensi­ty of Turner's inap­

propri­ate con­duct.

Fletcher first met with Turner in June 1995 but Turn­er refused to cooperate on the advice of his attorney.  Turner was more cooperative at a second examination in July.  Fol­low­ing the ap­point­ment, Fletch­er referred Turn­er to Dr. Chapman, a psy­chi­a­

trist, for further eval­u­a­tion.  In Au­gust 1995 Dr. Chapman con­

cluded Turn­er suffered "no mental disease, disor­der, or de­fect, or any other men­tal condition that substan­tially im­paired his capac­ity to serve in a full range of duties as a po­lice offi­cer."  Dr. Chapman's report was submitted to Fletcher.

Later in August 1995, Fletcher delivered the re­sults of his evaluation, in the form of a letter, to Fitzpatrick.  The letter in­clud­ed the following para­graph, which Turner deems ac­

tionable:

"I have concluded my evaluation on Ted Turn­er.  It is my opinion Ted Turner is 
not
 fit for duty as a police officer.  He was exam­ined by Dr. Chapman[,] who did not find any overt psychiatric diagnosis.  However, based on my total involvement in this case plus the re­view of the records, and input from all sources I do 
not
 believe that he is fit to function as a police officer."  (Em­

phasis in original.)

In the same letter, Fletcher also wrote:

"My observations are based on three evalua­

tions on Mr. Turner, as well as the review of the case file. ***  This specialist feels that his ability to function as a police of­

ficer needs to be based on his total work records, interaction with co-workers, citizen's com­plaints, and other pertinent sources.  I believe that he is 
impaired
 in his ability to respond effectively in emer­

gency situations."  (Emphasis in original.)

After Fletcher's evaluation was submitted, Turner was given an op­por­tu­ni­ty to get a sec­ond opin­ion while he re­mained on paid leave.  When, at the end of No­vem­ber 1995, Turner still had not seen another specialist, he was put on unpaid leave.  By Febru­ary 1996 Turner was evaluated and found fit for duty by Dr. Traugot and was rein­stated on February 4, 1996.  

In August 1996 Turner filed this action seeking $50,000 plus costs of the suit as compensatory damages for loss of in­

come, emotional and mental distress, embarrassment, humiliation, loss of appetite, loss of sleep, and loss of reputation amongst his col­leagues.  Count I alleges tortious interference with con­

tract, and Count II alleges defa­ma­tion for the paragraph indicat­

ed above.

Fletcher filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 1996)), which was de­nied after a hearing in August 1997, but then granted following another hearing in May 1998.  The trial court granted Fletcher's motion to dis­miss both counts because the statement at issue is sub­ject to a qualified privilege and any argu­ment that the privi­lege was abused is without merit.  The trial court further held Fletcher's statement is an opinion and  sub­ject to innocent con­struction.  This appeal followed.

II.  ANALYSIS

An action may be dismissed pursuant to section 2-619  when the asserted claim is barred by other affirma­tive mat­ter that defeats the claim or voids its legal effect.  "An 'affirmative matter' includes something in the nature of a de­

fense that com­pletely negates the alleged cause of action."  
Quinn v. Jewel Food Stores, Inc.
, 276 Ill. App. 3d 861, 870, 658 N.E.2d 1225, 1233 (1995).    

Dismissal of a cause of action on the pleadings is only proper when no set of facts can be proved that would entitle the plain­tiff to recover.  
Illinois Graphics Co. v. Nickum
, 159 Ill. 2d 469, 483, 639 N.E.2d 1282, 1289 (1994).  In making this deter­

mination, the court takes all well-pleaded facts as true, and all reason­able inferences there­from are con­strued in plaintiff's favor.  
Gouge v. Central Illinois Pub­lic Service Co.
, 144 Ill. 2d 535, 542, 582 N.E.2d 108, 111 (1991).  An appeal from an involun­

tary dismissal is subject to 
de
 
novo
 review.  
In re Estate of Mayfield
, 288 Ill. App. 3d 534, 542, 680 N.E.2d 784, 789 (1997).   A.  Defamation

Because "[a]n otherwise defamatory statement is not ac­

tionable if made under a qualified privilege," (
Larson v. Decatur Memorial Hospi­tal
, 236 Ill. App. 3d 796, 799, 602 N.E.2d 864, 867 (1992)), we first consider the trial court's finding of priv­i­

lege.  Illinois follows the Restatement (Second) of Torts in determining whether a qualified privilege should be recognized in a given situation.  
Gist v. Macon County Sheriff's Department
, 284 Ill. App. 3d 367, 372, 671 N.E.2d 1154, 1158 (1996).  Condi­

tion­al privi­leges generally fall into three categories:  "(1) situa­tions which involve some interest of the person who publish­

es the de­famatory matter; (2) situations which involve some in­

terest of the person to whom the matter is published or of some third per­son; and (3) situa­tions which involve a recognized in­

terest of the public."  
Gist
, 284 Ill. App. 3d at 372-73, 671 N.E.2d at 1158.  Whether a qual­i­fied privi­lege exists is a ques­tion of law.  
Kuwik v. Starmark Star Marketing & Administra­tion, Inc.
, 156 Ill. 2d 16, 619 N.E.2d 129 (1993); 
Larson
, 236 Ill. App. 3d at 802, 602 N.E.2d at 869.  Courts must look only to the occa­sion giv­ing rise to the defama­tion action to determine wheth­

er, as a matter of public policy, the occa­sion cre­at­ed some rec­

og­nized duty or in­terest that makes com­mu­nica­tion of the de­fama­

to­ry statement in that situation con­di­tion­ally priv­i­leged as a matter of law.  
Kuwik
, 156 Ill. 2d at 27, 619 N.E.2d at 134.  The inquiry is a gen­eral one, requiring the court to weigh the value of the type of inter­est to be protected against the degree of damage to be ex­pected from release of the type of defamatory matter involved.  
Kuwik
, 156 Ill. 2d at 28, 619 N.E.2d at 134.

Sound public policy supports recognition of a priv­i­lege for state­ments made under the circumstances of this case.  An ef­

fec­tive process for eval­u­a­ting fitness of police officers is es­

sen­tial to ensur­ing public safety and maintain­ing a reliable, re­

spon­si­ble police force.  Sub­ject­ing evalua­tors who con­scientious­

ly ful­fill their contrac­tual obliga­tions to provide such evalua­

tions to the appre­hension that such work may subject them to civil suits would cripple the effective administration of such evalua­tions.  
Cf
. 
Muthuswamy v. Burke
, 269 Ill. App. 3d 728, 731, 646 N.E.2d 616, 619-20 (1993) (held, state­ments of hos­pi­tal de­

partment head pertaining to the perfor­mance of a staff phy­si­cian are covered by qualified priv­ilege, and effec­tive review of the pro­fes­sion­al capa­bili­ties of physicians is a matter of seri­ous pub­lic policy).

The authors of the Restatement anticipated defamation claims under these circumstances and specifically ad­dressed the applicability of a privilege in the com­ments to section 598:  

"The duties of a public officer include su­

pervision of inferior officers, and this supervision in many cases carries with it the power to remove or discipline the inferiors for neglect of duty or malfeasance in of­fice ***.  In performing this duty of supervi­sion, it is desirable that public officers have exten­sive information concerning the conduct of their subordinates, in order that they may intelli­gently exercise their discre­tion.  Therefore, a defamatory publication made by a citizen to a public officer con­cerning the work of a subordinate under his control or supervision is condi­tionally priv­ileged."  Restatement (Second) of Torts §598, Com­ment 
e
, at 283 (1977).

We find the rationale of the Restate­ment persuasive and hold com­

munications be­tween supervisors of the police force and a hired eval­u­a­tor sub­ject to a qualified privilege.

While the bur­den of dem­on­strat­ing the exis­tence of a con­di­tion­al privi­lege is on the de­fendant (
Gist
, 284 Ill. App. 3d at 373, 671 N.E.2d at 1158), once the de­fendant dem­on­strates the priv­ilege exists, the bur­den shifts to the plain­tiff to dem­on­

strate an abuse of the privi­lege (
Gist
, 284 Ill. App. 3d at 374, 671 N.E.2d at 1159).  Whether the privilege has been abused is generally a question of fact to be determined by the jury.  
Kuwik
, 156 Ill. 2d at 27, 619 N.E.2d at 134; 
Barakat v. Matz
, 271 Ill. App. 3d 662, 669, 648 N.E.2d 1033, 1040 (1995).

Abuse of privilege occurs through any reck­less act that demonstrates a disregard for the defamed party's rights.  Failure to properly investigate the truth of the alleg­edly defam­atory material, failure to limit the scope of the mate­ri­al and failure to limit receipt thereof are all reck­less acts suffi­cient to destroy the privilege.  
Gist
, 284 Ill. App. 3d at 374, 671 N.E.2d at 1159;  
Gibson v. Philip Morris, Inc.
, 292 Ill. App. 3d 267, 275-76, 685 N.E.2d 638, 645 (1997).

While generally abuse of privilege is a ques­tion of fact for the jury (
Barakat
, 271 Ill. App. 3d at 669, 648 N.E.2d at 1040), if the pleadings and attached exhibits pres­ent no genu­

ine issue of mate­rial fact, the defendant is enti­tled to a judg­

ment as a mat­ter of law.  
Wright v. City of Danville
, 174 Ill. 2d 391, 398-99, 675 N.E.2d 110, 115 (1996).  Turner's complaint alleges Fletcher "knew" Turner "was in fact psy­cho­log­i­cally fit" for duty and acted with a reckless disregard for the truth.  Turner's conclusory allegations are belied on the face of Fletcher's let­ter where he references Dr. Chapman's re­port and states the basis for his opinion.  While Fletch­er and Dr. Chapman reached dis­pa­rate con­clusions on Turn­er's fit­ness, dis­agree­ment be­tween medi­cal pro­fes­sionals does not support an inference of recklessness.

More specifically, on appeal Turner takes issue with Fletcher's use of the word "overt" and his failure to state Dr. Chapman found Turn­er fit for duty.  Turner argues Fletcher's paraphrasing con­sti­tutes a mis­rep­re­sen­ta­tion of Dr. Chapman's report and that his doing so shows a reck­less disregard for Turner's rights.  We disagree.  Fletcher's letter acknowledges Chapman came to a con­trary con­clu­sion and ex­plains Fletch­er based his con­clu­sion on the totali­ty of his expe­riences with Turner and all of the in­for­ma­tion made avail­able to him.  We note Dr. Chapman's re­port is not in the re­cord on appeal and all refer­enc­

es herein to the contents of the report are based on Turner's com­plaint and the par­ties' briefs.

Turner's complaint does not specifically allege abuse of privilege by publication of material beyond the scope of prop­

erly privileged material, but does so by implication in its ref­

er­ence to Fletcher's "incompetency" to render a psychi­at­ric opin­

ion.  Turn­er ar­gued this point before the trial court and on ap­

peal contends Fletch­er is not qual­ified to make a fit­ness de­ter­

mina­tion, in this instance, be­cause he is a medi­cal doc­tor, not a psy­chi­a­trist.  Turn­er ar­gues that seek­ing an addi­tional opin­ion from a psychia­trist im­plies Fletch­er is in­com­pe­tent to ren­der an opin­ion on Turner's fitness.  We are not persuaded.  We find such con­duct alone merely in­dic­a­tive of a con­sci­en­tious ef­fort to be thor­ough and fair.  The university solicited Fletcher's opinion with knowledge of his qualifications.  In responding to that request Fletcher began with the words "it is my opinion," dis­

closed the conclu­sions of Dr. Chapman, and explained the basis for his opin­ion.  We do not find Fletcher's let­ter ex­ceed­ed the scope of prop­erly priv­i­leged mate­ri­al.        

Ac­cept­ing the factual alle­ga­tions in the com­plaint as true, we find Fletcher's an­swer and letter negate Turner's claim, leaving no genuine issues of fact.  Because Fletcher's statements are protected by a qualified privilege and Turner's allegations of abuse of privilege are without merit, dis­miss­al by the trial court was ap­pro­pri­ate and is af­firmed.  See 
Barakat
, 271 Ill. App. 3d at 670, 648 N.E.2d at 1040 (af­firm­ed dis­miss­al of defa­

mation claim on find­ing abuse of priv­ilege argu­ments with­out merit). 

B.  Tortious Interference with Contract

The essen­tial ele­ments of a tortious interference with contract claim are generally recognized as:  

"(1) the existence of a valid and enforceable contract between the plaintiff and anoth­er; (2) the defendant's awareness of this con­

tractual rela­tion; (3) the defendant's inten­

tional and unjus­ti­fied inducement of a breach of the contract; (4) a subsequent breach by the oth­er, caused by the defendant's wrongful conduct; and (5) damages."  
HPI Health Care Ser­vices, Inc. v. Mt. Vernon Hos­pital, Inc.
, 131 Ill. 2d 145, 154-55, 545 N.E.2d 672, 676 (1989). 

Courts will recognize a privilege in inten­tional inter­ference with contract cases "where the de­fendant was acting to protect an in­ter­est which the law deems to be of equal or greater value than the plaintiff's con­tractual rights."  
HPI Health Care
, 131 Ill. 2d at 157, 545 N.E.2d at 677.  Under certain circumstances a third party may be priv­ileged purposely to bring about a breach of contract between other par­ties.  
Schott v. Glover
, 109 Ill. App. 3d 230, 234, 440 N.E.2d 376, 379 (1982).

We find, under these circumstances, the superior in­ter­

est lies in pro­tect­ing Fletcher's right, and the rights of those similarly situ­ated, to free­ly render an opin­ion.  The public policy con­cerns dis­cussed in the defamation analysis are equally applicable here and rec­ognition of a privilege equally essential to fur­therance of those goals.

Likewise, we find no abuse of privilege by Fletch­er under this cause of action.  A de­fen­dant pro­tect­ed by a priv­ilege is not jus­ti­fied in engag­ing in conduct to­tally unre­lat­ed or antago­nistic to the interest that gave rise to defendant's priv­i­

lege.  
HPI Health Care
, 131 Ill. 2d at 158, 545 N.E.2d at 678.  Again, the allegation in Turner's com­plaint, that Fletcher "mis­

represented and concealed the opinions of Dr. Chapman," is negat­

ed by the content of Fletcher's letter.  Turner's complaint fur­

ther alleges an intent to interfere with his employment rela­tion­

ship but alleges no facts to support the exis­tence of any such inten­tion.  In 
HPI Health Care
 our supreme court held "where the con­duct of a de­fen­dant in an in­ter­fer­ence with con­tract ac­tion was privi­leged, it is the plaintiff's burden to plead and prove that the defendant's con­duct was unjus­tified or malicious."  
HPI Health Care
, 131 Ill. 2d at 156, 545 N.E.2d at 677.  The "mali­ce" re­quirement is met by show­ing the in­ter­fer­ence was intention­al and with­out jus­tifica­tion.  
HPI Health Care
, 131 Ill. 2d at 156-

57, 545 N.E.2d at 677.  To es­tab­lish an al­leged in­ter­ference was "un­jus­ti­fied," the plain­tiff must do more than merely asser­t the defendant's con­duct was unjus­tified.  The plaintiff must set forth "factual allega­tions from which it can reasonably be in­

ferred that the defendant's conduct was un­justi­fied."  
HPI Health Care
, 131 Ill. 2d at 158, 545 N.E.2d at 677.  

On review of the pleadings and exhibits we do not find Fletcher's con­duct re­mote­ly an­tag­onis­tic to Turner's con­tract rights.  The campus adminis­tra­tive manu­al and per­sonnel policy pro­vides for fit­ness-for-duty ex­ams.  Fletch­er performed an eval­

ua­tion under his contract with the uni­ver­si­ty and in ac­cordance with its personnel policy.  He disclosed the contrary opinion of Dr. Chapman and explained the basis for his own opinion.  To hold ren­der­ing an unfa­vor­able eval­ua­tion con­sti­tutes an abuse of priv­

i­lege would be tanta­mount to holding the privi­lege inap­plica­ble alto­gether.  We therefore af­firm the trial court's dis­miss­al of this claim.  

III.  CONCLUSION

For the foregoing reasons, the trial court's judgment is af­firmed.

Affirmed.

COOK and McCULLOUGH, JJ., concur­.