**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240134-U

Order filed May 2, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| DANIEL SCANDIFF, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Du Page County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-24-0134 |
| | ) | Circuit No. 21 L 213 |
| | ) | |
| ELIZABETH SCANDIFF, | ) | Honorable |
| | ) | Neal W. Cerne, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justice Peterson and Justice Davenport concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:    Whether the defendant abused a conditional privilege was a genuine issue of material fact precluding a directed finding in favor of the defendant in a defamation trial.

The plaintiff, Daniel Scandiff, brought a defamation suit against the defendant, his former daughter-in-law, Elizabeth Scandiff. Daniel claimed he was defamed when Elizabeth accused him of abusing her son, D.S (Daniel's grandson). Daniel's complaint alleged she made defamatory statements to a doctor, law enforcement, employees of the Department of Children and Family

Services (DCFS), Elizabeth's husband, her mother, and two of her brothers. The case proceeded to a bench trial. Following the presentation of Daniel's case-in-chief, the court granted Elizabeth's motion for a directed finding, ruling the alleged statements were either protected by privilege or did not constitute publication. Daniel appealed.

¶ 2                                           I. BACKGROUND

¶ 3         On February 18, 2021, Daniel filed suit against his former daughter-in-law, Elizabeth, alleging defamation. The case proceeded to a bench trial on February 13, 2024.

¶ 4         At trial, Daniel called Dr. Robert Shapiro, who testified that he was appointed by the court to perform an evaluation of D.S. during the divorce proceedings between Elizabeth and her then-husband, Daniel Scandiff, Jr. (Daniel, Jr.). Dr. Shapiro stated that Elizabeth reported allegations of abuse that D.S. related to her. Those allegations included statements by D.S. that Daniel was "hitting him in the butt with a hammer, putting toys up his butt," and "touching his penis." Elizabeth also described a story D.S. told her about going to the zoo with Daniel, where a stranger threw him in a garbage can. Elizabeth was aware that the stories were "strange," and that the zoo story was "obviously a fabrication." Both she and Daniel, Jr. acknowledged that D.S. "had a propensity to lie at that age and to tell outlandish stories." Nonetheless, Elizabeth was worried by the allegations, and she communicated them to DCFS.

¶ 5         Elizabeth testified as an adverse witness. She recounted being told by D.S. that Daniel had taken him to the zoo. On another occasion, D.S. told her that Daniel was in the bath with D.S. and they were "playing with a toy in the bathtub." The toy looked like a "little flashlight" and Elizabeth asked D.S. to describe "where *** he put it," and D.S. "pointed to by his butt," which scared Elizabeth. She found it "odd" that D.S. "kept telling [her] stories about the bath" and "telling [her] stories about being hit and hit in the butt with a hammer" and other stories

2

about "having dance parties and not being dressed." The stories made her "extremely uncomfortable" and "sick," and she felt the need to report them to somebody. She informed Daniel, Jr. about the allegations, and on August 3, 2020, she called the police and relayed the allegations to the two officers who responded to her home. Subsequently, D.S. was interviewed by the State's Attorney's office, and the claims were investigated by DCFS. She was unable to recall which allegations were contained in each report, but she testified that D.S. "was continuously saying concerning things," and she found his statements "really odd" and felt she had no choice but to report them. Ultimately, Elizabeth made three separate reports to DCFS.

¶ 6    Elizabeth also spoke to her mother and her brothers at that time but could not remember whether she told them "the exact details of things." She told her mother that D.S. was making "statements" that were "concerning." She testified she did not tell anyone that D.S. was being physically or sexually abused. Daniel's counsel then impeached Elizabeth with her responses to Daniel's pre-trial interrogatories, wherein Daniel asked her to identify "any individual [she] had communicated with concerning any allegations that [D.S.] was [abused]." Elizabeth's response to that interrogatory identified her husband, her mother, two of her brothers, her son, unknown DCFS employees, and unknown police officers as persons she had communicated with concerning allegations of abuse.

¶ 7    Elizabeth's mother testified that she and Elizabeth spoke on the phone every day. During one of their conversations, Elizabeth informed her that D.S. said Daniel and D.S. bathed together. She could not recall hearing any other allegations.

¶ 8    At the close of Daniel's case, Elizabeth moved for a directed finding. The circuit court granted the motion. In ruling on the motion, the court found that the statements made to Dr. Shapiro, the police, and DCFS were privileged communications, and it found the statements

3

made to Daniel, Jr., Elizabeth's mother, and Elizabeth's brothers did not amount to publication. Daniel appealed.

¶ 9                                   II. ANALYSIS

¶ 10        On appeal, Daniel contends the circuit court erred in entering a directed finding. He argues that Elizabeth's admission to communicating with her mother and brothers about the allegations constituted publication, and those communications were not protected by any privilege. Daniel argues he established a *prima facie* case for defamation.

¶ 11        To state a claim for defamation, a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that the publicized statement damaged the plaintiff. *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). A defamatory statement is " a statement that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Id.* Certain statements are regarded as actionable *per se*, in which case the plaintiff need not plead or prove actual damage to his or her reputation to recover. *Owen v. Carr*, 113 Ill. 2d 273, 277 (1986). Such statements are thought to be "so obviously and materially harmful to the plaintiff that injury to her reputation may be presumed." *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 87 (1996).

¶ 12        Section 2-1110 of the Code of Civil Procedure (735 ILCS 5/2-1110) (West 2024)) permits the defendant, at the close of the plaintiff's case-in-chief, to move for a directed finding during a bench trial. *527 S. Clinton, LLC v. Westloop Equities*, LLC, 403 Ill. App. 3d 42, 52 (2010). In ruling on such a motion, the court engages in a two-step analysis. First, the court determines as a matter of law whether the plaintiff has presented a *prima facie* case. *Id*. In other words, the plaintiff must have produced some evidence to support each element of the claimed

4

cause of action. *Id*. Second, the court considers the totality of the evidence presented, including evidence favorable to the defendant, to determine whether sufficient evidence remains to establish the plaintiff's *prima facie* case. *Id*.

¶ 13 If the court finds the plaintiff failed to present a *prima facie* case as a matter of law, our review is *de novo*. *Id*. at 52-53. If, however, the court considers the weight and quality of the evidence and finds that no *prima facie* case remains, we review whether the court's determination is against the manifest weight of the evidence. *Id*. Because we review the court's judgment and not its reasoning, we may affirm the court's ruling on any basis supported by the record, whether or not the court relied on that basis, and even if the court erred in its reasoning. *Estate of Sperry*, 2017 IL App (3d) 150703, ¶ 19 n.4.

¶ 14 On appeal, Daniel claims the court failed to conduct the required two-step analysis. However, Daniel's briefs provide no argument or reasoning to explain his contention. Elizabeth argues that the court, by considering the issue of privilege, implicitly found that Daniel had established a *prima facie* case but ruled it was defeated by the privileged nature of the statements. We find both positions unpersuasive. The court is "presumed to know the law and apply it properly" absent "strong affirmative evidence to the contrary." *People v. Howery*, 178 Ill. 2d 1, 32 (1997). We find that the court properly engaged in the required two-step analysis and concluded at the first stage that Daniel failed to present a *prima facie* case for defamation, and we will therefore review its grant of a directed finding *de novo*. *527 S. Clinton*, 403 Ill. App. 3d at 52-53.

¶ 15 Two types of privilege form an exception to the general rules of liability for defamatory communication. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 585 (2006). The first type is absolute privilege, where immunity is conferred without consideration of

the defendant's motive and is based on the principle that otherwise actionable conduct is shielded because the defendant is "acting in furtherance of some interest of social importance that is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation." *Weber v. Cueto*, 209 Ill. App. 3d 936, 942 (1991). Absolute privileges are limited primarily to statements made in the course of proceedings of the executive, legislative, and judicial branches. *Gist v. Macon County Sheriff's Department*, 284 Ill. App. 3d 367, 372 (1996). Absolute privilege arises in the context of litigation if the communication pertains to proposed or pending litigation. *Bedin v. Northwestern Memorial Hospital*, 2021 IL App (1st) 190723, ¶ 39.

¶ 16     The second type of privilege is conditional or qualified privilege, which generally falls into one of three categories: (1) situations which involve some interest of the person who publishes the defamatory statement; (2) situations which involve some interest of the person to whom the matter is published or of some third person; and (3) situations which involve a recognized interest of the public. *Kuwik v. Starmark Star Marketing & Administration, Inc.*, 156 Ill. 2d 16, 27 (1993). In determining whether a qualified privilege exists, we look to the occasion of the publication and determine as a matter of law and general policy whether the occasion created a recognized duty or interest that makes the communication privileged. *Id*. at 24.

¶ 17     Once a defendant demonstrates the existence of a qualified privilege, the burden shifts to the plaintiff to demonstrate abuse of that privilege. *Quinn v. Jewel Food Stores, Inc.*, 276 Ill. App. 3d 861, 871 (1995). A plaintiff may do so by establishing "any reckless act which shows a disregard for the defamed party's rights, including the failure to properly investigate the truth of the matter, limit the scope of the material, or send the material to only the proper parties." *Kuwik*, 156 Ill. 2d at 30.

¶ 18     Here, the circuit court found Elizabeth's statements to Dr. Shapiro were protected by the absolute litigation privilege because they were made while Dr. Shapiro was interviewing Elizabeth on behalf of the court during Elizabeth's divorce proceedings. The court's determination as to these statements was correct. A party involved in litigation has an absolute privilege to publish defamatory statements as part of the judicial proceeding. *Malevitis v. Friedman*, 323 Ill. App. 3d 1129, 1131 (2001). Moreover, any doubts about whether such statements are related to the pending litigation are resolved "in favor of finding the communication pertinent to the litigation." *Doe v. Williams McCarthy, LLP*, 2017 IL App (2d) 160860, ¶ 19. Elizabeth's statements to Dr. Shapiro were therefore not an "unprivileged publication to a third party" as required to establish a *prima facie* case for defamation. *Green*, 234 Ill. 2d at 491.

¶ 19     Similarly, "it is well settled in Illinois that statements made to law enforcement officials for the purpose of instituting criminal proceedings are absolutely privileged." *Bulluomini v. Zaryczny*, 2014 IL App (1st) 122664, ¶ 11. This privilege extends to proceedings instituted by administrative agencies acting in a judicial or quasi-judicial capacity. *Barakat v. Matz*, 271 Ill. App. 3d 662, 668 (1995). When DCFS "works at the behest of and in tandem with the State's Attorney with the intent and purpose of assisting in the prosecutorial effort, DCFS functions as an agent of the prosecution." *In re T.T.*, 384 Ill. App. 3d 147, 182-83 (2008). Here, DCFS investigated Elizabeth's claims pursuant to its statutory authority to investigate allegations of abuse on behalf of the State's Attorney. See 325 ILCS 5/7.4(b)(1) *et. seq.* (West 2020). Further, "once a privileged statement is made to law enforcement any subsequent restatements made in furtherance of an investigation fall under this privilege." *Razavi v. Walkuski*, 2016 IL App (1st) 151435, ¶ 8. Elizabeth's statements to law enforcement, the State's Attorney's office and DCFS

7

were thus subject to absolute privilege, and the circuit court properly determined they also could not form the basis of a *prima facie* defamation case.

¶ 20    Finally, the circuit court concluded that Elizabeth's statements to her husband, her mother, and her brothers did not amount to publication. Publication occurs when "an allegedly defamatory statement" is "communicate[d] *** to anyone besides the plaintiff." *Project44, Inc. v. FourKites, Inc.*, 2022 IL App (1st) 210575, ¶ 22. Upon reviewing the record, we find the circuit court erred when it found the statements made to Daniel, Jr., Elizabeth's mother, and Elizabeth's brothers did not constitute publication. Elizabeth testified she informed her husband of the allegations, her mother testified that Elizabeth informed her about at least one of the allegations, and Elizabeth's response to pre-trial interrogatories indicated she communicated with two of her brothers about the allegations. These communications were publications sufficient to establish a claim for defamation. *Id.*

¶ 21    However, regardless of publication, these statements would still not form the basis for a defamation claim if they were privileged. Elizabeth contends on appeal that her statements to family members were subject to a qualified privilege. The Restatement (Second) of Torts provides specific examples of occasions when conditional privileges exist, at least two of which apply to the allegedly defamatory statements made by Elizabeth. Section 595 provides:

"Protection of Interest of Recipient or a Third Person

(1) An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that

(a) there is information that affects a sufficiently important interest of the recipient or a third person, and

8

(b) the recipient is one to whom the publisher is under a legal duty to publish the

defamatory matter or is a person to whom its publication is otherwise within the

generally accepted standards of decent conduct.

(2) In determining whether a publication is within generally accepted standards of decent

conduct it is an important factor that

(a) the publication is made in response to a request rather than volunteered by the

publisher or

(b) a family or other relationship exists between the parties." Restatement (Second) of

Torts § 595 (1977).

Additionally, Section 597 provides:

"Family Relationships

(1) An occasion makes a publication conditionally privileged if the circumstances induce

a correct or reasonable belief that

(a) there is information that affects the well-being of a member of the immediate

family of the publisher, and

(b) the recipient's knowledge of the defamatory matter will be of service in the lawful

protection of the well-being of the member of the family." Restatement (Second)

of Torts § 597 (1977).

¶ 22            Applying the examples provided by the Restatement (Second) of Torts and the principles

articulated in *Kuwik*, we find that a conditional privilege protected Elizabeth's statements to her

family members regarding potential abuse. These statements were made exclusively to

Elizabeth's family members about a situation affecting the health and well-being of her son.

9

¶ 23     The existence of a qualified privilege does not resolve the case, however. As noted above, the existence of a qualified privilege will not shield a defendant from liability if the privilege was abused. *Id*. § 559, at 286 (1977); *Cianci v. Pettibone Corp.*, 298 Ill. App. 3d 419, 426 (1998). The potential abuse of a privilege raises a question of fact. The resolution of that question is properly the province of a trier of fact. *Kuwik*, 156 Ill. 2d at 27. "The question of whether a speaker abused her privilege can be determined as a matter of law only if the pleadings and attached exhibits present no genuine issue of material fact." *Anderson v. Beach*, 386 Ill. App. 3d 246, 253 (2008). Here, the court did not address the question of whether Elizabeth's statements were conditionally privileged, nor whether she abused that privilege. As noted above, the court entered its directed finding as to Elizabeth's statements to family members on the grounds that they were not published. Consequently, although we determine that Elizabeth's statements to family members were conditionally privileged, the factual question of whether Elizabeth abused that privilege must be resolved by the circuit court. See *id*. We therefore remand the case to the circuit court to make that determination.

¶ 24                              III. CONCLUSION

¶ 25     The judgment of the circuit court of Du Page County is reversed and remanded.

¶ 26     Reversed and remanded.

10