THEODORE R. TURNER, Plaintiff-Appellant, v. DAVID J. FLETCHER, Defendant-Appellee (Oliver J. Clark *et al.*, Respondents in Discovery).

Fourth District   No. 4—98—0490

Argued January 12, 1999.—Opinion filed February 4, 1999.

Robert G. Kirchner (argued), of Lerner & Kirchner, of Champaign, for appellant.

Richard C. Hayden and Kristine W. Tuttle (argued), both of Craig & Craig, of Mattoon, for appellee.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, Theodore R. Turner, appeals the trial court's dismissal of his defamation and intentional interference with contract claims. We affirm.

## I. BACKGROUND

Turner is a police officer for the University of Illinois police department in Champaign, Illinois, and has been since 1988 or 1989. In April 1995 Turner was placed on administrative leave with pay following reprimands and an evaluation by Dr. Campion finding Turner unfit for duty.

In May 1995 Turner's supervisor, Captain Krystal Fitzpatrick, contracted defendant, Dr. David Fletcher, M.D., MPH FACOEM (Master Public Health, Fellow American College Occupational and Environmental Medicine), to evaluate Turner's fitness for duty. Fletcher is a board-certified occupational and preventive medicine practitioner affiliated with Midwest Occupational Health Associates. In a five-page letter to Fletcher, Fitzpatrick detailed the department's observations of Turner's on-the-job conduct and the effect of that conduct on Turner's fellow officers, supervisors, and members of the public. Fitzpatrick noted a recent increase in the frequency and intensity of Turner's inappropriate conduct.

Fletcher first met with Turner in June 1995 but Turner refused to cooperate on the advice of his attorney. Turner was more cooperative at a second examination in July. Following the appointment, Fletcher referred Turner to Dr. Chapman, a psychiatrist, for further evaluation. In August 1995 Dr. Chapman concluded Turner suffered "no mental disease, disorder, or defect, or any other mental condition that substantially impaired his capacity to serve in a full range of duties as a police officer." Dr. Chapman's report was submitted to Fletcher.

Later in August 1995, Fletcher delivered the results of his evaluation, in the form of a letter, to Fitzpatrick. The letter included the following paragraph, which Turner deems actionable:

"I have concluded my evaluation on Ted Turner. It is my opinion Ted Turner is *not* fit for duty as a police officer. He was examined by Dr. Chapman[,] who did not find any overt psychiatric diagnosis. However, based on my total involvement in this case plus the review of the records, and input from all sources I do *not* believe that he is fit to function as a police officer." (Emphasis in original.)

In the same letter, Fletcher also wrote:

"My observations are based on three evaluations on Mr. Turner, as well as the review of the case file. *** This specialist feels that his ability to function as a police officer needs to be based on his total work records, interaction with co-workers, citizen's complaints, and other pertinent sources. I believe that he is *impaired* in his ability to respond effectively in emergency situations." (Emphasis in original.)

After Fletcher's evaluation was submitted, Turner was given an opportunity to get a second opinion while he remained on paid leave. When, at the end of November 1995, Turner still had not seen another specialist, he was put on unpaid leave. By February 1996 Turner was evaluated and found fit for duty by Dr. Traugot and was reinstated on February 4, 1996.

In August 1996 Turner filed this action seeking $50,000 plus costs of the suit as compensatory damages for loss of income, emotional and mental distress, embarrassment, humiliation, loss of appetite, loss of sleep, and loss of reputation amongst his colleagues. Count I alleges tortious interference with contract, and count II alleges defamation for the paragraph indicated above.

Fletcher filed a motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1996)), which was denied after a hearing in August 1997, but then granted following another hearing in May 1998. The trial court granted Fletcher's motion to dismiss both counts because the statement at issue is subject to a qualified privilege and any argument that the privilege was abused

is without merit. The trial court further held Fletcher's statement is an opinion and subject to innocent construction. This appeal followed.

## II. ANALYSIS

■ An action may be dismissed pursuant to section 2—619 when the asserted claim is barred by other affirmative matter that defeats the claim or voids its legal effect. "An 'affirmative matter' includes something in the nature of a defense that completely negates the alleged cause of action." *Quinn v. Jewel Food Stores, Inc.*, 276 Ill. App. 3d 861, 870, 658 N.E.2d 1225, 1233 (1995).

■ Dismissal of a cause of action on the pleadings is only proper when no set of facts can be proved that would entitle the plaintiff to recover. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 483, 639 N.E.2d 1282, 1289 (1994). In making this determination, the court takes all well-pleaded facts as true, and all reasonable inferences therefrom are construed in plaintiff's favor. *Gouge v. Central Illinois Public Service Co.*, 144 Ill. 2d 535, 542, 582 N.E.2d 108, 111 (1991). An appeal from an involuntary dismissal is subject to *de novo* review. *In re Estate of Mayfield*, 288 Ill. App. 3d 534, 542, 680 N.E.2d 784, 789 (1997).

## A. Defamation

■ Because "[a]n otherwise defamatory statement is not actionable if made under a qualified privilege," (*Larson v. Decatur Memorial Hospital*, 236 Ill. App. 3d 796, 799, 602 N.E.2d 864, 867 (1992)), we first consider the trial court's finding of privilege. Illinois follows the Restatement (Second) of Torts in determining whether a qualified privilege should be recognized in a given situation. *Gist v. Macon County Sheriff's Department*, 284 Ill. App. 3d 367, 372, 671 N.E.2d 1154, 1158 (1996). Conditional privileges generally fall into three categories: "(1) situations which involve some interest of the person who publishes the defamatory matter; (2) situations which involve some interest of the person to whom the matter is published or of some third person; and (3) situations which involve a recognized interest of the public." *Gist*, 284 Ill. App. 3d at 372-73, 671 N.E.2d at 1158. Whether a qualified privilege exists is a question of law. *Kuwik v. Starmark Star Marketing & Administration, Inc.*, 156 Ill. 2d 16, 619 N.E.2d 129 (1993); *Larson*, 236 Ill. App. 3d at 802, 602 N.E.2d at 869. Courts must look only to the occasion giving rise to the defamation action to determine whether, as a matter of public policy, the occasion created some recognized duty or interest that makes communication of the defamatory statement in that situation conditionally privileged as a matter of law. *Kuwik*, 156 Ill. 2d at 27, 619 N.E.2d at 134. The inquiry is a general one, requiring the court to weigh the value of the type of

interest to be protected against the degree of damage to be expected from release of the type of defamatory matter involved. *Kuwik*, 156 Ill. 2d at 28, 619 N.E.2d at 134.

Sound public policy supports recognition of a privilege for statements made under the circumstances of this case. An effective process for evaluating fitness of police officers is essential to ensuring public safety and maintaining a reliable, responsible police force. Subjecting evaluators who conscientiously fulfill their contractual obligations to provide such evaluations to the apprehension that such work may subject them to civil suits would cripple the effective administration of such evaluations. *Cf. Muthuswamy v. Burke*, 269 Ill. App. 3d 728, 731, 646 N.E.2d 616, 619-20 (1993) (held, statements of hospital department head pertaining to the performance of a staff physician are covered by qualified privilege, and effective review of the professional capabilities of physicians is a matter of serious public policy).

■ The authors of the Restatement anticipated defamation claims under these circumstances and specifically addressed the applicability of a privilege in the comments to section 598:

> "The duties of a public officer include supervision of inferior officers, and this supervision in many cases carries with it the power to remove or discipline the inferiors for neglect of duty or malfeasance in office ***. In performing this duty of supervision, it is desirable that public officers have extensive information concerning the conduct of their subordinates, in order that they may intelligently exercise their discretion. Therefore, a defamatory publication made by a citizen to a public officer concerning the work of a subordinate under his control or supervision is conditionally privileged." Restatement (Second) of Torts § 598, Comment *e*, at 283 (1977).

We find the rationale of the Restatement persuasive and hold communications between supervisors of the police force and a hired evaluator subject to a qualified privilege.

■ While the burden of demonstrating the existence of a conditional privilege is on the defendant (*Gist*, 284 Ill. App. 3d at 373, 671 N.E.2d at 1158), once the defendant demonstrates the privilege exists, the burden shifts to the plaintiff to demonstrate an abuse of the privilege (*Gist*, 284 Ill. App. 3d at 374, 671 N.E.2d at 1159). Whether the privilege has been abused is generally a question of fact to be determined by the jury. *Kuwik*, 156 Ill. 2d at 27, 619 N.E.2d at 134; *Barakat v. Matz*, 271 Ill. App. 3d 662, 669, 648 N.E.2d 1033, 1040 (1995).

■ Abuse of privilege occurs through any reckless act that demonstrates a disregard for the defamed party's rights. Failure to properly investigate the truth of the allegedly defamatory material,

failure to limit the scope of the material and failure to limit receipt thereof are all reckless acts sufficient to destroy the privilege. *Gist,* 284 Ill. App. 3d at 374, 671 N.E.2d at 1159; *Gibson v. Philip Morris, Inc.,* 292 Ill. App. 3d 267, 275-76, 685 N.E.2d 638, 645 (1997).

■ While generally abuse of privilege is a question of fact for the jury (*Barakat,* 271 Ill. App. 3d at 669, 648 N.E.2d at 1040), if the pleadings and attached exhibits present no genuine issue of material fact, the defendant is entitled to a judgment as a matter of law. *Wright v. City of Danville,* 174 Ill. 2d 391, 398-99, 675 N.E.2d 110, 115 (1996). Turner's complaint alleges Fletcher "knew" Turner "was in fact psychologically fit" for duty and acted with a reckless disregard for the truth. Turner's conclusory allegations are belied on the face of Fletcher's letter where he references Dr. Chapman's report and states the basis for his opinion. While Fletcher and Dr. Chapman reached disparate conclusions on Turner's fitness, disagreement between medical professionals does not support an inference of recklessness.

■ More specifically, on appeal Turner takes issue with Fletcher's use of the word "overt" and his failure to state Dr. Chapman found Turner fit for duty. Turner argues Fletcher's paraphrasing constitutes a misrepresentation of Dr. Chapman's report and that his doing so shows a reckless disregard for Turner's rights. We disagree. Fletcher's letter acknowledges Chapman came to a contrary conclusion and explains Fletcher based his conclusion on the totality of his experiences with Turner and all of the information made available to him. We note Dr. Chapman's report is not in the record on appeal and all references herein to the contents of the report are based on Turner's complaint and the parties' briefs.

Turner's complaint does not specifically allege abuse of privilege by publication of material beyond the scope of properly privileged material, but does so by implication in its reference to Fletcher's "incompetency" to render a psychiatric opinion. Turner argued this point before the trial court and on appeal contends Fletcher is not qualified to make a fitness determination, in this instance, because he is a medical doctor, not a psychiatrist. Turner argues that seeking an additional opinion from a psychiatrist implies Fletcher is incompetent to render an opinion on Turner's fitness. We are not persuaded. We find such conduct alone merely indicative of a conscientious effort to be thorough and fair. The university solicited Fletcher's opinion with knowledge of his qualifications. In responding to that request Fletcher began with the words "it is my opinion," disclosed the conclusions of Dr. Chapman, and explained the basis for his opinion. We do not find Fletcher's letter exceeded the scope of properly privileged material.

Accepting the factual allegations in the complaint as true, we find

Fletcher's answer and letter negate Turner's claim, leaving no genuine issues of fact. Because Fletcher's statements are protected by a qualified privilege and Turner's allegations of abuse of privilege are without merit, dismissal by the trial court was appropriate and is affirmed. See *Barakat*, 271 Ill. App. 3d at 670, 648 N.E.2d at 1040 (affirmed dismissal of defamation claim on finding abuse of privilege arguments without merit).

### B. Tortious Interference with Contract

■ ■ The essential elements of a tortious interference with contract claim are generally recognized as:

> "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 154-55, 545 N.E.2d 672, 676 (1989).

Courts will recognize a privilege in intentional interference with contract cases "where the defendant was acting to protect an interest which the law deems to be of equal or greater value than the plaintiff's contractual rights." *HPI Health Care*, 131 Ill. 2d at 157, 545 N.E.2d at 677. Under certain circumstances a third party may be privileged purposely to bring about a breach of contract between other parties. *Schott v. Glover*, 109 Ill. App. 3d 230, 234, 440 N.E.2d 376, 379 (1982).

We find, under these circumstances, the superior interest lies in protecting Fletcher's right, and the rights of those similarly situated, to freely render an opinion. The public policy concerns discussed in the defamation analysis are equally applicable here and recognition of a privilege equally essential to furtherance of those goals.

■ Likewise, we find no abuse of privilege by Fletcher under this cause of action. A defendant protected by a privilege is not justified in engaging in conduct totally unrelated or antagonistic to the interest that gave rise to defendant's privilege. *HPI Health Care*, 131 Ill. 2d at 158, 545 N.E.2d at 678. Again, the allegation in Turner's complaint, that Fletcher "misrepresented and concealed the opinions of Dr. Chapman," is negated by the content of Fletcher's letter. Turner's complaint further alleges an intent to interfere with his employment relationship but alleges no facts to support the existence of any such intention. In *HPI Health Care* our supreme court held "where the conduct of a defendant in an interference with contract action was privileged, it is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified or malicious." *HPI Health Care*, 131 Ill. 2d at 156, 545 N.E.2d at 677. The "malice" requirement is

met by showing the interference was intentional and without justification. *HPI Health Care*, 131 Ill. 2d at 156-57, 545 N.E.2d at 677. To establish an alleged interference was "unjustified," the plaintiff must do more than merely assert the defendant's conduct was unjustified. The plaintiff must set forth "factual allegations from which it can reasonably be inferred that the defendant's conduct was unjustified." *HPI Health Care*, 131 Ill. 2d at 158, 545 N.E.2d at 677.

On review of the pleadings and exhibits we do not find Fletcher's conduct remotely antagonistic to Turner's contract rights. The campus administrative manual and personnel policy provides for fitness-for-duty exams. Fletcher performed an evaluation under his contract with the university and in accordance with its personnel policy. He disclosed the contrary opinion of Dr. Chapman and explained the basis for his own opinion. To hold rendering an unfavorable evaluation constitutes an abuse of privilege would be tantamount to holding the privilege inapplicable altogether. We therefore affirm the trial court's dismissal of this claim.

## III. CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

Affirmed.

COOK and McCULLOUGH, JJ., concur.