NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (4th) 230143-U

NO. 4-23-0143

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 17, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| RMS INSURANCE SERVICES, INC., d/b/a FLANDERS INSURANCE AGENCY, and OWEN G. COSTANZA, an Individual, | ) ) ) | Appeal from the Circuit Court of Boone County |
|         Plaintiffs-Appellants, | ) | No. 21L30 |
|         v. | ) | |
| DONALD G. SATTLER, an Individual, MARION L. THORNBERRY, an Individual, ELISABETH M. RODGERS, an Individual, | ) ) ) | |
|         Defendants-Appellees, | ) | |
|         and | ) | Honorable |
| CHERYL RUSSELL-SMITH, an Individual, | ) | Stephen Balogh, |
|         Defendant. | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Harris and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's judgment is affirmed because plaintiffs failed to establish the court erred in granting defendants' motion for summary judgment.

¶ 2        On October 18, 2021, plaintiffs RMS Insurance Services, Inc., d/b/a Flanders Insurance Agency (Flanders), and Owen G. Costanza, in his individual capacity, filed a 17-count complaint against defendants Donald G. Sattler, Marion L. Thornberry, Elisabeth M. Rodgers, and Cheryl Russell-Smith. On July 8, 2022, the trial court allowed plaintiffs leave to file a 13-count first amended complaint. The amended complaint no longer included counts directed at Cheryl Russell-Smith. Thereafter, on August 22, 2022, defendants Sattler, Thornberry, and Rodgers filed a motion for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure

(Procedure Code) (735 ILCS 5/2-1005 (West 2022)), asking the court to dismiss plaintiffs' first amended complaint with prejudice, along with a separate motion to dismiss counts I, II, and III of plaintiffs' first amended complaint pursuant to section 2-615 of the Procedure Code (*id.* § 2-615). On January 18, 2023, the court granted both of defendants' motions and dismissed plaintiffs' entire amended complaint with prejudice. Plaintiffs appeal, arguing the court erred in granting defendants' motions. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        According to plaintiffs' complaint, Costanza was the former president of the Village of Poplar Grove. During the 2020 election, Sattler ran against Costanza for the office of village president. Costanza was the incumbent village president at that time. The complaint outlined animosity that existed between Costanza and defendants prior to and after the election.

¶ 5        Plaintiffs alleged defendants made defamatory statements about Costanza through a flyer, verbally, and through other means, including social media. According to plaintiffs' complaint, the alleged defamatory statements included accusations Costanza committed criminal acts, including insurance fraud. Plaintiffs attached the flyer to their complaint. Sattler defeated Costanza in the election. However, plaintiffs alleged defendants continued to post the allegations against Costanza after the election was over.

¶ 6        Plaintiffs' complaint made individual claims of tortious interference with prospective business advantage, tortious interference with contract, defamation, and common law business defamation against Sattler, Thornberry, Rodgers, and Smith, respectively. Plaintiffs also alleged a civil conspiracy between Sattler, Thornberry, Rodgers, and Smith to tortiously interfere with plaintiffs' contracts with existing customers and damage plaintiffs' business and reputation in the community.

¶ 7 We have attached the flyer at issue to this order. At the top of the flyer, in underlined red ink is the headline "My Opponent[']s Criminal Record Is," followed by a colon. Then, under that headline, the flyer contains the following 13 bullet points: (1) "1995 Pleads Guilty to Filing a False Report in Boone County"; (2) "1999 Terminated from Liberty Insurance for Fraud Misrepresentation"; (3) "1999 Pleads Guilty Writing Bad Check in Boone County"; (4) "2000 Home Foreclosure in Boone County"; (5) "2000 Completes Chapter 7 Bankruptcy Filed in 1996 as Chapter 13"; (6) "2007 Pleads Guilty for Drunk Driving Winnebago County"; (7) "2008 Wisconsin DOI Denies Insurance License for False Application"; (8) "2010 Indiana DOI Fines Him $1500 False Application & Revokes Insurance License"; (9) "2011 Terminated from RMS Service Group for Misappropriating Company Funds"; (10) "2012 Answers Fraudulently Again on Illinois DOI License Renewal Application"; (11) "2014 Illinois DOI Investigates Numerous Complaints by Insurance Customers, Past Terminations, Criminal History, Unlawful Fund Withdrawals, and Fines & Discipline from Wisconsin and Indiana (IL-14-HR-0482 & IN-934-AG10-8031-135)"; (12) "2014 Illinois DOI Revokes Insurance Business License for Major Agency Violations"; and (13) "2015 Illinois DOI Disciplines and Fines Him $30,000.00 for Multiple Repeat Violations." Under the bullet points, the flyer states, "We cannot allow a repeat criminal like Mr. Costanza to Defraud our village like he has defrauded his creditors, customers, past employers[,] and the Wisconsin, Indiana, and Illinois Departments of Insurance. What else has he done to us?" Located on the right side of the flyer are two red, solid circles. Over each circle is a solid black "X." Over each black "X" and red circle are the words "INSURANCE FRAUD" in a red font. At the bottom of the flyer in a red font is the phrase "Restore Integrity to Poplar Grove," which is followed by "Paid for by friends of Sattler for Village President" in a smaller, black, italicized font.

¶ 8 On January 12, 2022, defendants Sattler, Thornberry, and Rodgers filed a motion to dismiss pursuant to section 2-619(a)(1) of the Procedure Code (*id.* § 2-619(a)(9)), asking the trial court to dismiss plaintiffs' complaint pursuant to the Citizen Participation Act (Act) (735 ILCS 110/1 *et seq.* (West 2022)). Defendants argued plaintiffs' complaint was a strategic lawsuit against public participation (SLAPP) claim and requested the complaint be dismissed with prejudice. That same day, defendants Sattler, Thornberry, and Rodgers also filed motions to dismiss plaintiffs' complaint pursuant to section 2-615 of the Procedure Code (735 ILCS 5/2-615 (West 2022)).

¶ 9 On March 25, 2022, the trial court granted plaintiffs' oral motion to voluntarily dismiss Smith and the counts directed at her without prejudice.

¶ 10 On April 14, 2022, the trial court entered an order which took the defendants' motion to dismiss plaintiffs' complaint pursuant to the Act under advisement.

¶ 11 On May 11, 2022, the trial court (Judge Ronald A. Barch presiding) issued a written order denying defendants' section 2-619(a)(9) (*id.* § 2-619(a)(9)) motion to dismiss plaintiffs' complaint as a SLAPP claim under the Act. Defendants' other motions to dismiss were not addressed by the court.

¶ 12 Judge Barch stated the Act was designed to protect citizens from SLAPP claims. Citing *Garrido v. Arena*, 2013 IL App (1st) 120466, ¶ 15, and *Prakash v. Parulekar*, 2020 IL App (1st) 191819, ¶ 33, Judge Barch indicated SLAPP lawsuits are meritless claims used to retaliate against a citizen for attempting to participate in government through the exercise of his constitutional rights of freedom of speech and/or the right to petition. According to Judge Barch's order:

"When determining whether a SLAPP should be dismissed under Section

2-619, courts are required to engage in a three-step analysis: (1) whether the movant's acts were in furtherance of his right to petition, speak, associate, or otherwise participate in government to obtain favorable government action; (2) whether the nonmovant's claims are solely based on, related to, or in response to the movant's acts in furtherance of his constitutional rights; and (3) whether the nonmovant failed to prove that the movant's acts were not genuinely aimed at solely procuring favorable government action. [Citation.] The movant bears the burden of proof under the first two prongs of the analysis, after which the burden shifts to the nonmovant."

Judge Barch found that it was clear Sattler, Thornberry, and Rodgers's individual actions were in furtherance of their respective rights to petition, speak, associate, or otherwise participate in government action.

¶ 13    Turning to the second prong of the analysis and citing *Prakash*, 2020 IL App (1st) 191819, ¶ 34, and *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 45, Judge Barch stated the Act was not "intended to protect those who commit tortious acts and then seek refuge in the immunity conferred by the Act." Again, relying on *Sandholm*, 2012 IL 111443, ¶ 50, Judge Barch indicated "[t]he legislative history of the Act supports the conclusion that the legislature intended to target only *meritless*, retaliatory SLAPPs and did not intend to establish a new absolute privilege or qualified privilege for defamation and other torts." (Emphasis in original.) Judge Barch indicated that when a plaintiff's complaint does not constitute a SLAPP because it "genuinely seeks redress for damages from defamation or other intentional torts ***, it is irrelevant whether the defendants' actions were genuinely aimed at procuring favorable government action, result, or outcome." Further, the order stated:

"How to prove a claim is 'meritorious' or 'retaliatory' is a central question to the second prong of the SLAPP analysis. [Citation.] A claim is 'meritless' if the moving party disproves some essential element of the nonmovant's claim. [Citation.] In the end, the Act is expressly designed to bar only those lawsuits that try to abuse the justice system by bringing unfounded claims in retaliation against defendants who legitimately exercise their First Amendment rights, while simultaneously preserving the right of individuals to file lawsuits for real injuries. [Citation.]"

Citing *Garrido*, 2013 IL App (1st) 120466, ¶ 27, Judge Barch noted the fact a defendant may prevail on an affirmative defense in a defamation action does not mean the defamation action is meritless. The trial court explained, "Stated differently, in the case of statements that constitute defamation, even if defendants can prove the allegedly defamatory statements at issue are substantially true or constitutionally privileged, they cannot carry their burden of showing that plaintiff's claim is meritless."

¶ 14       The trial court concluded defendants had established some of the statements in the flyer were in fact true, which made tort claims based solely on those assertions meritless as a matter of law. However, as for the rest of the assertions attributed to defendants, the court determined those statements were not clearly truthful. According to Judge Barch's order:

"In summary, the court finds that the Defendants have proven that some of the statements attributed to them are truthful, making tort claims based upon those statements separately and individually meritless as a matter of law. As to the balance of statements attributed to the Defendants, however, whether the statements are blatantly false, partially false[,] or substantially true[,] and whether the statements were intended and understood to be false, misleading, defamatory, and

- 6 -

injurious to Plaintiffs are questions of fact for the jury. It will be up to a jury to determine whether Plaintiffs suffered tortious injury from statements and materials that comingled arguably true statements with statements that are facially untrue, arguably false[,] or substantially true. Whether allegedly defamatory materials are substantially true is normally a jury question. [Citation.] Here, the pleadings, exhibits[,] and attachments give rise to a genuine question of fact as to whether the gist or sting of the allegedly false, misleading *** statements and materials is substantially true. Because the Defendants have failed to demonstrate that all of Plaintiffs' claims are meritless, the Defendants have failed to carry their burden of proving that Plaintiffs' lawsuit is a SLAPP. Defendants' Section 2-619 motion to dismiss is therefore denied."

¶ 15 On May 27, 2022, the trial court entered a stipulated order continuing defendants' remaining motions to dismiss and indicating plaintiffs could file their motion for leave to file an amended complaint within 30 days.

¶ 16 On June 21, 2022, plaintiffs filed a motion for leave to file their first amended complaint. The amended complaint was directed at Sattler, Thornberry, and Rodgers and included individual claims against each defendant for tortious interference with prospective business advantage, tortious interference with contract, defamation *per se*, and common law business defamation *per se*. The amended complaint also included a count alleging a civil conspiracy between Sattler, Thornberry, and Rodgers to tortiously interfere with plaintiffs' contracts with existing customers, tortiously interfere with plaintiffs' prospective business advantage, and damage plaintiffs' business and reputations in the community.

¶ 17 On July 8, 2022, the trial court granted plaintiffs' motion for leave to file their first

amended complaint.

¶ 18 On August 22, 2022, defendants Sattler, Thornberry, and Rodgers filed a motion for summary judgment pursuant to section 2-1005 of the Procedure Code (735 ILCS 5/2-1005 (West 2022)). Defendants argued plaintiffs' amended complaint should be dismissed in its entirety. In addition, these same defendants filed a separate motion to dismiss plaintiffs' tortious interference with business counts (count I, II, and III) pursuant to section 2-615 of the Procedure Code (*id.* § 2-615).

¶ 19 On January 18, 2023, the trial court (Judge Stephen E. Balogh presiding) issued a written order granting defendants' motion for summary judgment, dismissing all of plaintiffs' first amended complaint with prejudice and granting defendants' motion to dismiss counts I, II, and III of plaintiffs' first amended complaint. Judge Balogh's order indicated plaintiffs' amended complaint included a few additional allegations regarding damages but was substantially similar to plaintiffs' original complaint. The court also indicated defendants had "provided affidavits, documents from the public record, as well as documents obtained from the Departments of Insurance for Illinois, Indiana[,] and Wisconsin. In response, Costanza ha[d] supplied his own affidavit."

¶ 20 According to Judge Balogh's order, plaintiffs alleged the three defendants wanted to ruin Costanza's career in local politics and collaterally damaged Costanza's insurance business. Judge Balogh noted that defendants conceded they had publicly disseminated the allegations in the flyer and continued doing so after the election because Costanza was still active in local politics, pursuing positions in local government and the local Republican party. Judge Balogh recognized Costanza and the three defendants were all Republicans. According to the trial court's order:

"In the instant matter, Costanza has pled that none of the defendant's [*sic*] behavior

- 8 -

was privileged because they knew the allegations of the flyer to be false. The crux of the defendants' motion for summary judgment is that their statements are all privileged because those statements are indisputably, materially and substantially true.

It is undisputed that at the time \*\*\* the flyer was publicly disseminated, Costanza was an elected official and running for another public office. The gravamen of his amended complaint is that the statements made in the flyer and repeated on social media and literally, in the public square, all concerned his fitness for public office. Therefore, as the court has previously held, the allegations involve a public person and matters of public concern. Thus, in determining whether there is a genuine issue of material fact giving rise to a question of whether Costanza or his business were defamed, the court must consider not only privilege associated with truth, but the heightened protections of privilege arising out of the First Amendment to the U.S. Constitution.

Protections afforded to speech (expression) by the First Amendment are designed to assure, 'unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' *Miller v. California*, 413 U.S. 15, 24-35 (1973). These protections have been interpreted as limiting the reach of state defamation laws. See *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 755 (1985). To what extent state defamation laws are constrained by the Constitution requires consideration of the status of the plaintiff, whether he is a public figure and whether the speech at issue is of public concern. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775 (1986). Additionally, if speech

addresses a matter of public concern, the burden is on the plaintiff to prove that the defendant actually knew the statement was false at the time it was published. *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 395-96 (2008).

Thus, under Illinois law, recovery for a defamatory statement in this case will only be allowed if there is a showing of actual malice. This requires proof by the plaintiff that has, 'established both that the utterance was false and that it was made with knowledge of its falsity or in reckless disregard of whether it was false or true.' *Catalano v. Pechous*, 83 Ill. 2d 146, 155 (1980); *Jacobson v. CBS Broadcasting, Inc.*, 2014 IL App (1st) 132480, ¶ 36[ ] (citations omitted). Reckless disregard means that the defendant had a 'high degree of awareness' that the statement was probably false or 'entertain[ed] serious doubts as to its truth.' *Jacobson*, quoting *Kuwik v. Starmark Star Marketing & Administration, Inc.*, 156 Ill. 2d 16, 24-25 (1993)."

Judge Balogh then went through the flyer's bullet points, stating the truth of the statements was either undisputed or objectively verified by administrative records.

¶ 21        Judge Balogh then turned his attention to the following statement at the bottom of the flyer, "We cannot allow a repeat criminal like Mr. Costanza to defraud our village like he has defrauded his creditors, customers, past employers[,] and the Wisconsin, Indiana, and Illinois Departments of Insurance. What else has he done to us?" According to the trial court's order:

"It is here that the message intended to be conveyed by the previous statements is encapsulated. The defendants wanted the voters of the Village to believe that Costanza was not deserving of their trust or their votes. Nothing could

be more representative of the, 'unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' *Miller*, 413 U.S. at 24-35. The social context of this message is inarguably to paint Costanza as unworthy of holding elected office.

Nonetheless, Costanza argues that the statements made in the flyer should not be protected because the defendants knew that he had never been criminally convicted of insurance fraud and that criminality will be inferred from the overall context of the flyer. The question of law for the court is whether the statements made in the flyer, including both express assertions as well as implications drawn from the whole, are factual in nature, and whether they were made with a high degree of knowledge of their falsity. *Jacobson*, 2014 IL App (1st) 132480, ¶ 36."

Judge Balogh indicated Costanza argued he had never been convicted of insurance fraud but did not dispute he was accused of insurance fraud by a prior employer and was administratively disciplined and fined for making misrepresentations to insurance officials in Illinois, Indiana, and Wisconsin. In addition, the court stated plaintiffs did not dispute Costanza's Illinois "producer's license for one of his operating entities has been permanently revoked and that entity was civilly fined $30,000.00 for repeated misrepresentations." Judge Balogh also noted Costanza had two criminal convictions for misdemeanor offenses, one involving dishonesty, and had also received supervision after pleading guilty to a third misdemeanor offense.

¶ 22     Continuing the trial court's analysis, Judge Balogh stated: "Whether the statements have precise meaning or are well understood is clouded by the headers regarding Costanza's criminal record and insurance fraud. It must be remembered that there is no direct allegation that Costanza has ever been criminally convicted of the crime of insurance fraud." Further, Judge

Balogh noted the term "insurance fraud" can have different meanings.

¶ 23        The trial court indicated it was undisputed that Costanza had been accused of, administratively disciplined for, and fired for committing fraud in the general sense of the word while working in the insurance industry. The court also noted defendants argued the flyer and related statements were materially and substantially true or, in other words, that the gist or sting of the flyer was true. According to Judge Balogh's analysis, "[t]he sting of the flyer is that Costanza has engaged in professional misrepresentation and fraud, within the ordinary meaning of the word, in his capacity as an insurance producer." Further, "[g]iven Costanza's record of misfeasance, malfeasance[,] and nonfeasance in both his professional and personal lives, the court finds that no reasonable jury could find that characterizations of that record as criminal or as involving insurance fraud exaggerate the substantial truth of defendants' statements." In finalizing the court's analysis, Judge Balogh stated:

> "As discussed above, the defendants have provided documentation from the public record as well as documentation received in response to [Freedom of Information Act] requests which objectively verify the substantive truth of each of [the] allegations made in the flyer. However, the statements regarding 'my opponent's criminal record' and 'insurance fraud', which both appear in larger type and red ink, are amorphous and not so easily verifiable.
>
> Both are technically true. Costanza does have a misdemeanor criminal record and has engaged in fraud, as that term is generally understood, in his work as an insurance professional. To the extent that the meaning of the headings on the flyer are open to differing subjective interpretations, they are no more than assertions of opinion, not defamatory facts applicable to the plaintiff. See *Imperial*

- 12 -

*Apparel*, 227 Ill. 2d at 398.

Finally, the court must examine whether there is anything about the social context of the statements that renders them more likely to be construed as factual rather than opinion. *Id.* The social context of those remarks is that they were made in the effort to keep Costanza from [being] elected to a position of trust in their community, and, on a continuing basis, to keep him from holding any position of trust within the Village or the local Republican Party.

*Therefore, the court finds that the statements made by the defendants in regard to Costanza were and are privileged because they concern a matter of public interest and involve a public person. The statements are, as discussed above, factual in nature and substantially true*." (Emphasis added.)

¶ 24    This appeal followed.

¶ 25                                    II. ANALYSIS

¶ 26    We first note this is a complicated case. Further, plaintiffs' arguments in their appellants' brief are difficult to comprehend and are incomplete. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires an appellant's brief to include "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." A reviewing court is not a depository into which the appellant may dump his burden of argument and research. *People v. Macias*, 2015 IL App (1st) 132039, ¶ 88. "Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 27    The primary basis for plaintiffs' appeal is their contention the trial court erred in granting defendants' motion for summary judgment. Summary judgment is proper when " 'the

- 13 -

pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Suburban Real Estate Services, Inc. v. Carlson*, 2022 IL 126935, ¶ 15 (quoting 735 ILCS 5/2-1005(c) (West 2018)). Plaintiffs are correct that summary judgment is a drastic way to resolve a case and should only be allowed when the moving party's right to such a judgment is clear and free from doubt. *Id.* (citing *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986)). However, when a party moving for summary judgment supplies facts which, if not contradicted, would entitle the moving party to a judgment as a matter of law, the nonmoving party may not rely on his pleadings alone to raise issues of material fact. *Purtill*, 111 Ill. 2d at 240.

¶ 28 "A defendant may, at any time, move with or without supporting affidavits for a summary judgment in his or her favor as to all or any part of the relief sought against him or her." 735 ILCS 5/2-1005(b) (West 2022). When moving for summary judgment, a defendant may satisfy his initial burden of proof "either by affirmatively showing that some element of the case must be resolved in its favor or by establishing that there is an absence of evidence to support the plaintiff's case." *Ross Advertising, Inc. v. Heartland Bank & Trust Co.*, 2012 IL App (3d) 110200, ¶ 28.

¶ 29 A plaintiff does not have to prove his case to survive a defendant's motion for summary judgment. *Id.* However, a plaintiff "must present a factual basis that would arguably entitle the plaintiff to a judgment." *Id.* "If a plaintiff cannot establish an element of her cause of action, summary judgment for the defendant is proper." *Id.* We apply a *de novo* standard when reviewing an order granting a motion for summary judgment. *Id.*

¶ 30                                        A. Judge Barch's Order

¶ 31 We first address plaintiffs' argument that Judge Barch's order denying defendants' motion to dismiss pursuant to section 2-619 of the Procedure Code (735 ILCS 5/2-619 (West

- 14 -

2022)) precluded Judge Balogh from granting defendants' motion for summary judgment. As previously stated, defendants' motion to dismiss argued plaintiffs' complaint was a SLAPP action under the Act (735 ILCS 110/1 *et seq.* (West 2022)).

¶ 32        According to plaintiffs, the fact Judge Barch and Judge Balogh could look at the facts in this case and draw different inferences precludes summary judgment. Plaintiffs assert "[a] triable issue of fact exists where there is a dispute as to a material fact or where, although the facts are not in dispute, reasonable minds might differ in drawing inferences from those facts." *Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill. 2d 17, 31 (1999).

¶ 33        Plaintiffs contend "[t]here can probably be no better example of a 'reasonable mind' than that of a Circuit Court Judge." According to plaintiffs' brief:

> "Here, two very experienced judges came to opposite conclusions based on the same facts. Not only were these two judges examining the same facts but they were sitting in the same courtroom in the same circuit on the same case. All that is required to find a triable issue and preclude summary judgment is the possibility that reasonable minds might differ in drawing inferences. The mere possibility is enough to preclude summary judgment. Here[,] the two reasonable minds actually drew different inferences from the same facts. This alone merits reversal under *Petrovich*."

On the surface, this argument has some persuasive appeal.

¶ 34        However, Judge Barch and Judge Balogh were ruling on different matters. Judge Barch denied defendants' motion to dismiss plaintiffs' complaint as a SLAPP claim, and Judge Balogh granted defendants' motion for summary judgment. As a result, this is not a situation where Judge Balogh was simply asked to reconsider an earlier denial of a motion for summary judgment.

¶ 35      Regardless, even if we treated Judge Barch's ruling as the denial of a motion for summary judgment, the Second District has stated:

> "[A] long line of cases has condoned the authority of a successor judge to change the interlocutory rulings of a predecessor judge. [Citations.] A successor court has the power to modify or revise an interlocutory order at any time prior to final judgment. [Citations.] When the interlocutory order involved the exercise of a prior judge's discretion, the successor judge may overturn the order only where new facts or circumstances warrant such action and there is no evidence of judge shopping. [Citation.] On the other hand, where the successor judge finds that the previous interlocutory order is erroneous as a matter of law, the successor judge, absent evidence of judge shopping, may correct the previous order regardless of the existence of a new matter." *Brandon v. Bonell*, 368 Ill. App. 3d 492, 502 (2006).

Both the denial of a motion for summary judgment and the denial of a motion to dismiss are interlocutory orders that may be revised prior to a final judgment. *Id.*

¶ 36      Plaintiffs do not argue Judge Barch made a discretionary decision when denying defendants' SLAPP motion to dismiss or that defendants engaged in judge shopping. As a result, plaintiffs have failed to establish Judge Balogh's summary judgment ruling was precluded by Judge Barch's denial of the motion to dismiss. Therefore, plaintiffs must establish other reasons why Judge Balogh erred in granting defendants' motion for summary judgment.

¶ 37                                B. Judge Balogh's Order

¶ 38      We first note the foundation for all of plaintiffs' claims is the defendants' publication of the alleged defamatory statements about Costanza. This requires a brief overview of the law regarding defamation claims.

¶ 39                                    1. *Applicable Law*

¶ 40          "To state a defamation claim, a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). A statement is defamatory if it "harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Id.*

¶ 41          If a statement's harm is obvious and facially apparent, the statement is defamatory *per se.* Our supreme court has stated:

> "In Illinois, there are five categories of statements that are considered defamatory *per se*: (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication.

> * * *

> It is well settled that, even if an alleged statement falls into one of the categories of words that are defamatory *per se*, it will not be actionable *per se* if it is reasonably capable of an innocent construction. [Citation.] Under the 'innocent-construction rule,' a court must consider the statement *in context* and give the words of the statement, and any implications arising from them, their natural and obvious meaning. [Citation.] Indeed, this court has emphasized that the context of the

- 17 -

statement is critical in determining its meaning, as a given statement may convey entirely different meanings when presented in different contexts. [Citation.] If the statement may reasonably be innocently interpreted, it cannot be actionable *per se*. [Citation.] \*\*\* At the same time, when the defendant clearly intended and unmistakably conveyed a defamatory meaning, a court should not strain to see an inoffensive gloss on the statement." (Emphasis in original.) *Id.* at 491-92, 499-500.

¶ 42 Further, even if a statement is defamatory, the statement cannot support a defamation claim if it is true. *Harrison v. Addington*, 2011 IL App (3d) 100810, ¶ 39. A defendant does not have to establish the defamatory statement was "technically accurate in every detail." *Gist v. Macon County Sheriff's Department*, 284 Ill. App. 3d 367, 371 (1996). Instead, the defendant only needs to establish the defamatory assertions are substantially true, which the defendant "can demonstrate by showing that the 'gist' or 'sting' of the defamatory material is true." *Id.*

¶ 43 According to this court in *Gist*, "When determining the 'gist' or 'sting' of allegedly defamatory material, a trial court must 'look at the highlight of the article, the pertinent angle of it, and not to items of secondary importance which are inoffensive details, immaterial to the truth of the defamatory statement.' " *Id.* (quoting *Vachet v. Central Newspapers, Inc.*, 816 F. 2d 313, 316 (7th Cir. 1987)). Normally, whether defamatory assertions are substantially true is a question for the jury. *Id.* However, a court can decide this question as a matter of law if no reasonable jury could find the defamatory assertions were not substantially true. *Id.*

¶ 44 Regardless, even if a defamatory statement is not substantially true, the statement is not actionable if protected by a qualified privilege. *Turner v. Fletcher*, 302 Ill. App. 3d 1051, 1055 (1999). Whether a qualified privilege exists is a question of law. *Id.* According to our

supreme court:

> "Qualified privilege in Illinois defamation law is based on a policy of protecting honest communications of misinformation in certain favored circumstances in order to facilitate the availability of correct information. [Citation.] A privileged communication is one that might be defamatory and actionable except for the occasion on which, or the circumstances under which, it is made. [Citation.] Qualified privilege enhances a defamation plaintiff's burden of proof. [Citation.] In the absence of qualified privilege, a plaintiff need only show that the defendant acted with negligence in making the defamatory statements in order to prevail."
>
> *Dent v. Constellation NewEnergy, Inc.*, 2022 IL 126795, ¶ 30.

Once a defendant demonstrates a qualified privilege exists, the plaintiff bears the burden of demonstrating the defendant abused the privilege. *Gist*, 284 Ill. App. 3d at 374.

¶ 45        " '[A]n abuse of a qualified privilege may consist of any reckless act which shows a disregard for the defamed party's rights, including the failure to properly investigate the truth of the matter, limit the scope of the material, or send the material to only the proper parties.' " *Dent*, 2022 IL 126795, ¶ 30 (quoting *Kuwik v. Star Marketing & Administration, Inc.*, 156 Ill. 2d 16, 30 (1993)). Generally, whether a defendant abused the privilege is a question of fact for a jury to decide. *Turner*, 302 Ill. App. 3d at 1057. However, the defendant is entitled to a judgment as a matter of law if the pleadings and exhibits present no genuine issue of material fact regarding the applicability of the privilege. *Id.*

¶ 46                2. *Judge Balogh's Reasoning and Plaintiffs' Burden*

¶ 47        As previously stated, Judge Barch was ruling on a motion to dismiss plaintiffs' claim as a SLAPP action, and Judge Balogh was determining whether defendants were entitled to

summary judgment. Judge Barch, citing *Garrido*, 2013 IL App (1st) 120466, ¶ 27, stated the fact defendants hypothetically could prevail on an affirmative defense such as substantial truth or constitutional privilege did not establish plaintiffs' claim was a meritless SLAPP justifying dismissal at that time. In granting defendants' motion for summary judgment, Judge Balogh ruled both (1) "the statements made by the defendants in regard to Costanza were and are privileged because they concern a matter of public interest and involve a public person" and (2) the statements in the flyer were "factual in nature and substantially true." For this court to reverse the trial court's summary judgment ruling, plaintiffs need to establish the trial court was wrong on both points. Even if this court were to agree with plaintiffs that the trial court erred by ruling the statements in the flyer were substantially true, this court could affirm the trial court's ruling if plaintiffs did not also establish the trial court erred in determining the statements were not actionable pursuant to a qualified privilege.

¶ 48                       3. *Plaintiffs' Specific Arguments*

¶ 49          Plaintiffs argue Judge Balogh erred in granting defendants' motion for summary judgment because the trial court did not ignore certain allegations in the flyer, including defendants' allegations regarding Costanza's (1) criminal convictions and guilty pleas, (2) administrative and regulatory issues, and (3) personal financial issues. According to plaintiffs, Judge Balogh should have only considered the following information from the flyer in deciding the motion for summary judgment: (1) "*My Opponents [sic] Criminal Record Is:*"; (2) "INSURANCE FRAUD"; (3) "We cannot allow a repeat criminal like Mr. Costanza to Defraud our village like he has defrauded his creditors, customers, past employers[,] and the Wisconsin, Indiana, and Illinois Departments of Insurance"; (4) "What else has he done to us?"; (5) "INSURANCE FRAUD"; (6) "Restore Integrity to Poplar Grove"; and (7) "Paid for by friends

of Sattler for Village President." We find no merit in the points defendant argues.

¶ 50    As for plaintiffs' argument the statements in the flyer regarding Costanza's prior criminal convictions and guilty pleas should not have been considered by the trial court because they were inadmissible pursuant to Illinois Rule of Evidence 609(b) (eff. Jan. 6, 2015) because more than 10 years had passed since he entered those guilty pleas, we note plaintiffs provided this court with no analysis explaining why Rule 609(b) has any relevance here, and we see none. Rule 609 governs when prior convictions may be used to impeach a witness. In this case, the evidence concerning Costanza's prior convictions and guilty pleas was not being used to impeach him. Instead, Judge Balogh was considering the truth of defendants' statements regarding Costanza's prior guilty pleas.

¶ 51    Turning to their next argument, plaintiffs argue Judge Balogh erred by considering the statements in the flyer regarding Costanza's administrative issues, regulatory issues, and personal financial issues because those statements by defendants "are immaterial to the determination of the defamatory nature of the Flyer." We disagree. As noted earlier, courts must look at the alleged defamatory statements in context, giving "the words of the statement, and any implications arising from them, their natural and obvious meaning." *Green*, 234 Ill. 2d at 499-500. According to our supreme court, "the context of the statement is critical in determining its meaning, as a given statement may convey entirely different meanings when presented in different contexts." *Id*. Plaintiffs have failed to establish the trial court erred in examining all of the statements made in the flyer.

¶ 52    4. *Qualified Privilege*

¶ 53    We note plaintiffs' arguments on appeal challenging the merits of Judge Balogh's ruling granting defendants' motion for summary judgment appear to be directed only at the trial

court's ruling the allegations in the flyer were substantially true. Even if a defamatory statement is not substantially true, the statement is not actionable if protected by a qualified privilege. *Turner*, 302 Ill. App. 3d at 1055. As a result, even if this court agreed with plaintiffs that the trial court erred by determining the statements were substantially true, plaintiffs must still establish why the trial court erred in determining the statements are not actionable because of a qualified privilege.

¶ 54        Plaintiffs present no arguments on this point. As a result, pursuant to Rule 341(h)(7), plaintiffs forfeited any argument they may have had that Judge Balogh erred in granting defendants' motion for summary judgment because the statements are not actionable because of a qualified privilege. In their reply brief, plaintiffs argued defendants' actions were not privileged. However, plaintiffs' argument is not timely. Rule 341(h)(7) makes clear "[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 55        Because plaintiffs' arguments failed to establish the trial court erred in ruling the alleged defamatory statements were substantially true, and because plaintiffs forfeited any argument the court erred in finding the statements were not actionable because of a qualified privilege, we affirm the court's summary judgment order.

¶ 56                C. Tortious Interference and Civil Conspiracy Claims

¶ 57        Moving on, plaintiffs stated in their appellants' brief that defendants conceded plaintiffs' tortious interference and civil conspiracy claims because they were not addressed in defendants' motion for summary judgment. According to plaintiffs' brief, "Defendants have made no arguments regarding either Plaintiffs' (i) tortious interference with contract counts, (ii) tortious interference with prospective business advantage counts, or (iii) the civil conspiracy count." We disagree. The foundation for all of plaintiffs' claims in their amended complaint was defendants'

alleged defamation. As a result, defendants' motion for summary judgment challenged all of plaintiffs' claims.

¶ 58                                    D. Motion to Dismiss

¶ 59         We need not address plaintiffs' argument regarding defendants' motion to dismiss the first three counts of plaintiffs' amended complaint because plaintiffs have failed to establish the trial court erred in granting defendants' motion for summary judgment as to the entire amended complaint.

¶ 60                                    III. CONCLUSION

¶ 61         For the reasons stated, we affirm the trial court's judgment.

¶ 62         Affirmed.

PC

FILED
BOONE COUNTY ILLINOIS
10/18/2021 3:39 PM
LINDA J. ANDERSON
CLERK OF THE CIRCUIT COURT

2021L30

# My Opponents Criminal Record Is:

- 1995 Pleads Guilty to Filing a False Report in Boone County
- 1999 Terminated from Liberty Insurance for Fraud Misrepresentation
- 1999 Pleads Guilty Writing Bad Check in Boone County
- 2000 Home Foreclosure in Boone County
- 2000 Completes Chapter 7 Bankruptcy Filed In 1996 As Chapter 13
- 2007 Pleads Guilty for Drunk Driving Winnebago County
- 2008 Wisconsin DOI Denies Insurance License for False Application
- 2010 Indiana DOI Fines Him $1500 False Application & Revokes Insurance License
- 2011 Terminated from RMS Service Group for Misappropriating Company Funds
- 2012 Answers Fraudulently Again on Illinois DOI License Renewal Application
- 2014 Illinois DOI Investigates Numerous Complaints by Insurance Customers, Past Terminations, Criminal History, Unlawful Fund Withdrawals, and Fines & Discipline from Wisconsin and Indiana (IL-14-HR-0482 & IN-934-AG10-8031-135)
- 2014 Illinois DOI Revokes Insurance Business License for Major Agency Violations
- 2015 Illinois DOI Disciplines and Fines Him $30,000.00 for Multiple Repeat Violations



We cannot allow a repeat criminal like Mr. Costanza to Defraud our village like he has defrauded his creditors, customers, past employers and the Wisconsin, Indiana, and Illinois Departments of Insurance. What else has he done to us?

**Restore Integrity to Poplar Grove.**

Paid for by friends of Settler for Village President

**EXHIBIT 1 - False Flyer**

E 66